# EXHIBIT 3

# HUESTON HENNIGAN LLP

**JOHN C. HUESTON**
DIRECT   949 226 6740
EMAIL   JHUESTON@HUESTON.COM

OFFICE   949 229 8640
FAX   888 775 0898

620 NEWPORT CENTER DRIVE SUITE 1300 NEWPORT BEACH, CA 92660

September 3, 2019

**VIA E-MAIL & U.S. MAIL**

Eric Rosen
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

Re:   Varsity Blues Discovery (19-CR-10080-NMG)

Dear Mr. Rosen:

We write to request production of documents and other materials relevant to our defense of the criminal action brought by the United States against our client, William McGlashan Jr. ("McGlashan"). We request these materials pursuant to the United States Constitution, Federal Rules of Criminal Procedure 16 and 26.2, the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and its progeny, including *Giglio v. United States*, 405 U.S. 150, 154 (1972), Local Rules 116.1, 116.2, and 116.4, and the principles set forth in the Justice Manual at § 9-5.001 *et seq.*

This letter calls for all responsive material and information in the possession, custody, or control of the United States Attorney's Office ("USAO"), any law enforcement or regulatory agencies involved in any way in regulating or investigating the activities alleged in the indictment or related transactions, including but not limited to the Federal Bureau of Investigation ("FBI"), or any agent or attorney of the USAO or any such law enforcement or regulatory agency (collectively, "the government").

Although the government has produced some discovery pursuant to Local Rule 116.1, we believe the government has in its possession, custody, or control yet other materials that are responsive to the below requests or are otherwise required to be produced under the authorities cited above. To ensure that McGlashan is prepared at the next status conference to discuss the motions he expects to be filing, we request that any response or production of documents related to the below requests be made by September 17, 2019. If you do not have additional documents or evidence to produce in response to a particular request, please advise us if the government is representing that it has produced all responsive documents, no such documents or evidence exist or if, rather, the government is choosing not to produce the documents and evidence. Your response is necessary so that we can correctly frame each dispute for the Court.

Each request is of a continuing nature, and we request prompt notice in the event responsive information comes to the government's attention at any point in the future.

Pursuant to Rule 16, we hereby request the following:

1. The substance of any relevant oral statement made by McGlashan. *See* Fed R. Crim. P. 16(a)(1)(A). This includes, without limitation, internal reports and

5623912

**HUESTON HENNIGAN** LLP

ERIC ROSEN  PAGE 2
SEPTEMBER 3, 2019

    memoranda prepared by government agents where the statements of Mr. McGlashan are relayed or described therein.

2. All relevant written or recorded statements, including written records containing the substance of any relevant oral statement, that are within the possession, custody, or control of the government, known by the government, or could through the exercise of due diligence become known to the government, and made by McGlashan. *See* Fed R. Crim. P. 16(a)(1)(B).

3. A copy of McGlashan's prior criminal record, if any, that is within the government's possession, custody, or control if the attorney for the government knows—or through due diligence could know—that the record exists. *See* Fed R. Crim. P. 16(a)(1)(D).

Also pursuant to Rule 16, we hereby request all documents and objects that are "material to preparing the defense" or that "the government intends to use … in its case-in-chief at trial," including materials that will be marked and offered into evidence and materials that will be relied upon or referred to in any way by any witness the government calls during its case-in-chief. *See* Fed R. Crim. P. 16(a)(1)(E); CrimLR16.1(a)(1). Items that are "material to preparing the defense" specifically encompass documents and reports – including 302s -- that are pertinent to a potential entrapment defense. *See United States v. Pesaturo*, 519 F. Supp. 2d 177, 191–92 (D. Mass. 2007). This request includes, without limitation:

4. All documents referred to in the Indictment.

5. All documents that relate to communications between any defendant and any co-defendant or alleged co-conspirator, indicted or unindicted, concerning any of the matters alleged in the Indictment.

6. All documents that relate to communications between any defendant and any other person concerning any of the matters alleged in the Indictment.

7. All documents relating to the matters alleged in the Indictment that were obtained by the government in the course of its investigation from any person, whether or not pursuant to a grand jury subpoena.

8. All documents and witness statements, including but not limited to 302s, that report or summarize interviews with any defendant, cooperator, witness, or potential witness in the Varsity Blues investigation, including but not limited to William Rick Singer ("Singer") and/or Mark Riddell ("Riddell").

9. All documents and witness statements that that relate to any plea agreement entered into by any government cooperator related to or arising out of the Varsity Blues investigation.

10. All documents and witness statements pertaining to the cooperation of any government cooperator in the Varsity Blues investigation.

5623912

**HUESTON HENNIGAN** LLP

---

ERIC ROSEN  
SEPTEMBER 3, 2019

PAGE 3

11. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was predisposed to commit any of the crimes with which he is charged.

12. All documents, witness statements, or other evidence that could support the conclusion that McGlashan conspired with any person other than Singer to commit mail fraud.

13. All documents, witness statements, or other evidence that could support the conclusion that McGlashan conspired with any person other than Singer to commit wire fraud.

14. All documents, witness statements, or other evidence that could support the conclusion that McGlashan conspired with any person other than Singer to commit honest services fraud.

15. All documents, witness statements, or other evidence that could support the conclusion that McGlashan conspired with any person other than Singer to commit money laundering.

16. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to deprive ACT, Inc. of money or property.

17. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to deprive ACT, Inc. of something of value.

18. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to deprive ACT, Inc. of money or property.

19. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to deprive ACT, Inc. of something of value.

20. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to deprive any University, including without limitation the University of Southern California, of money or property.

21. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to deprive any University, including without limitation the University of Southern California, of something of value.

22. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to deprive any University, including without limitation the University of Southern California, of money or property.

23. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to deprive any University, including without limitation the University of Southern California, of something of value.

24. All documents, witness statements, or other evidence that could support the conclusion that ACT or SAT tests and/or test scores are "property" within the meaning of 18 U.S.C. §§ 1341 and/or 1343.

25. All documents, witness statements, or other evidence that could support the conclusion that ACT or SAT tests and/or test scores have monetary value.

26. All documents, witness statements, or other evidence that could support the conclusion that admissions slots are "property" of a University within the meaning of 18 U.S.C. §§ 1341 and/or 1343.

27. All documents, witness statements, or other evidence that could support the conclusion that the determination of which students to admit is "property" of a University within the meaning of 18 U.S.C. §§ 1341 and/or 1343.

28. All documents, witness statements, or other evidence that could support the conclusion that the composition of an undergraduate class is "property" of a University within the meaning of 18 U.S.C. §§ 1341 and/or 1343.

29. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew that Igor Dvorskiy or any other person affiliated with Singer also served as a compensated standardized test administrator for ACT, Inc., and the College Board.

30. All documents, witness statements, or other evidence that could support the conclusion that compensated ACT and SAT administrators have a fiduciary duty to ACT, Inc. and/or the College Board.

31. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to pay ACT exam administrators.

32. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to pay ACT exam administrators.

33. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to bribe ACT exam administrators.

34. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to bribe ACT exam administrators.

ERIC ROSEN  
SEPTEMBER 3, 2019  
PAGE 5

35. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to pay anyone affiliated with ACT, Inc.

36. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to pay anyone affiliated with ACT, Inc.

37. All documents, witness statements, or other evidence that could support the conclusion that McGlashan acted with the purpose of "cheating on college entrance exams" generally, as alleged in ¶ 61a of the Indictment.

38. All documents, witness statements, or other evidence that could support the conclusion that McGlashan had any interest in obtaining a better test score for any child other than his own.

39. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware that Singer bribed university athletic coaches and administrators.

40. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to bribe university athletic coaches and administrators.

41. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to bribe athletic coaches and administrators

42. All documents, witness statements, or other evidence that could support the conclusion that McGlashan acted with the purpose of "brib[ing] university athletic coaches and administrators," generally, as alleged in ¶ 61b of the Indictment.

43. All documents, witness statements, or other evidence that could support the conclusion that McGlashan had any interest in "brib[ing] university athletic coaches and administrators on behalf of any child other than his own.

44. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to "submit falsified applications for admission" to any University.

45. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to "submit falsified applications for admission" to any University.

46. All documents, witness statements, or other evidence that could support the conclusion that McGlashan acted with the purpose of "submitting falsified applications for admission to universities" generally, as alleged in ¶ 61d of the Indictment.

**HUESTON HENNIGAN** LLP

ERIC ROSEN  PAGE 6
SEPTEMBER 3, 2019

47. All documents, witness statements, or other evidence that could support the conclusion that McGlashan had any interest in the University application of any child other than his own.

48. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew that a photograph of someone other than his son was sent to the University of Southern California ("USC") or anyone affiliated with USC.

49. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew that an athletic profile about his son was sent to USC or anyone affiliated with USC.

50. All documents, witness statements, or other evidence that could support the conclusion that an athletic profile was submitted to the University of Southern California as part of McGlashan's son's application.

51. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew that Riddell would be involved with his son's ACT exam.

52. All documents, witness statements, or other evidence that could support the conclusion that Riddell or any other person changed McGlashan's son's ACT exam answers.

53. All documents, witness statements, or other evidence that show Riddell's location for any dates the government alleges he took an exam on behalf of a student.

54. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware that Riddell or any other person changed his son's ACT exam answers.

55. All documents, witness statements, or other evidence that could support the conclusion that the score McGlashan's son achieved on the ACT exam was falsified.

56. All documents, witness statements, or other evidence that could support the conclusion that McGlashan's son was not capable of achieving the score he achieved on the ACT.

57. All documents, witness statements, or other evidence that could support the conclusion that Singer made any payment to Igor Dvorskiy in connection with McGlashan.

58. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware that Singer made any payment to Igor Dvorskiy on his behalf or otherwise.

**HUESTON HENNIGAN** LLP

ERIC ROSEN  PAGE 7
SEPTEMBER 3, 2019

59. All documents, witness statements, or other evidence that could support the conclusion that Singer made any payment to Riddell in connection with McGlashan.

60. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware that Singer made any payment to Riddell on his behalf or otherwise.

61. All documents, witness statements, or other evidence that could support the allegation that McGlashan agreed to pay Singer $250,000 to facilitate his son's admission to USC.

62. All documents, witness statements, or other evidence that could support the conclusion that Singer told McGlashan that any portion of the $250,000 would be paid as a bribe to any other person.

63. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware that any portion of the $250,000 would be paid as a bribe to any other person.

64. All documents, witness statements, or other evidence that could support the conclusion that McGlashan fabricated an athletic profile containing falsified athletic credentials on behalf of his son.

65. All documents, witness statements, or other evidence that could support the conclusion that McGlashan intended for Singer or any other person to submit false information to USC on behalf of his son.

66. All documents, witness statements, or other evidence that could support the conclusion that McGlashan asked Singer to submit an application on his son's behalf to the University of Southern California or any other University.

67. All documents, witness statements, or other evidence that could support the conclusion that KWF was not a legitimate charitable organization.

68. All documents, witness statements, or other evidence that could support the conclusion that McGlashan believed or was aware that KWF was not a legitimate charitable organization.

69. All documents, witness statements, or other evidence that could support the conclusion that McGlashan's payment to KWF was unlawful or qualified as "the proceeds of unlawful activity."

70. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew or was aware that Singer used KWF to make payments to anyone affiliated with the test taking or college admissions process.

**HUESTON HENNIGAN** LLP

ERIC ROSEN  PAGE 8
SEPTEMBER 3, 2019

71. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew or was aware that Singer used KWF to conceal the nature or source of payments.

72. All documents, witness statements, or other evidence that could support the conclusion that McGlashan acted with the intent to conceal or disguise the nature or source of his payments to KWF.

73. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to conceal the nature or source of his payment to KWF.

74. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to conceal the nature or source of his payment to KWF.

75. All documents, witness statements, or other evidence that could support the conclusion that McGlashan acted with the purpose of concealing the nature or source anyone else's payments to KWF.

76. All documents, witness statements, or other evidence that could support the conclusion that McGlashan acted with the intent to conceal or disguise the nature or source of any payment made by Singer, the Key, or KWF.

77. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with Singer to conceal or disguise the nature or source of any payment made by Singer, the Key, or KWF.

78. All documents, witness statements, or other evidence that could support the conclusion that McGlashan agreed with any person other than Singer to conceal or disguise the nature or source of any payment made by Singer, the Key, or KWF.

79. All documents, witness statements, or other evidence that could support the conclusion that McGlashan transported, transmitted, or transferred funds to Singer or KWF from any place outside of the United States

80. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware of any payments made from Singer, the Key, or KWF to any place outside of the United States.

81. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware of any payments made to Singer, the Key, or KWF from any place outside of the United States.

82. All documents, witness statements, or other evidence that could support the conclusion that McGlashan knew that a payment to KWF would be for anything other than a donation to provide opportunities to disadvantaged youth.

5623912

83. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware of payments from any person besides himself to accounts in the name of The Key or KWF.

84. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was aware of payments to any person from accounts in the name of The Key or KWF.

85. All documents, witness statements, or other evidence that could support the conclusion that McGlashan referred other parents to Singer.

86. Documents evidencing when Singer first became aware of the government's investigation.

87. Documents evidencing the government's first contact with Singer.

88. Documents evidencing the government's first contact with anyone affiliated with Singer.

89. Documents evidencing that, other than the allegations in the indictment, McGlashan had any activity, communication, or other connection related to the District of Massachusetts.

90. Documents evidencing that Singer induced or encouraged McGlashan's son to apply to Northeastern University.

With respect to *Brady* materials, the government's disclosure obligations under the United States constitution include the obligation to provide all evidence "favorable to an accused." 373 U.S. at 87. As the Supreme Court has explained, "the prudent prosecutor will err on the side of transparency, resolving doubtful questions in favor of disclosure." *Cone v. Bell*, 556 U.S. 449, 469 n. 15 (2009); *see also United States v. Duval*, 496 F.3d 64, 73-74 (1st Cir. 2007) (government "clear[ly] violat[ed] its *Brady* and Jencks Act obligations" by keeping scant notes on conversation with principal witness that tended to exculpate prime suspects, engaging in "shoddy record-keeping … with regard to payments to confidential informants," and by making "overly broad statements" that all exculpatory information had been disclosed when in fact the government had not disclosed "all that it knew"); Justice Manual § 9-5.001(B)(1) (directing prosecutors to "take a broad view of materiality of evidence and err on the side of disclosing exculpatory and impeachment evidence.").

Moreover, the government's Brady obligation is not limited to information in the possession of the prosecutors: "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *see also* Justice Manual § 9-5.001(B)(2) (noting that prosecutors have the obligation "to seek all exculpatory and impeachment information from all members of the prosecution team … includ[ing] federal, state, and local law enforcement officers[.]"). Thus, the *Brady* material in this case encompasses information in the possession of the FBI, as well as others acting on the government's behalf that may be unknown to McGlashan.

ERIC ROSEN  PAGE 10
SEPTEMBER 3, 2019

In addition, *Brady* material encompasses impeachment evidence. *See Kyles*, 514 U.S. at 432 (the Court [has] disavowed any difference between exculpatory and impeachment evidence for *Brady* purposes"); *United States v. Snell*, 899 F. Supp. 17, 23 (D. Mass. 1995) ("There is no question but that as a general matter, the *Brady* obligation includes the requirement to turn over evidence of impeachment.").

In light of the foregoing, McGlashan hereby requests information to be produced no later than September 17 that could be construed as "favorable" to him, *see* 373 U.S. at 87, including, but not limited to the following:

91. Any recordings, in whatever form, of calls between Singer and McGlashan or any other defendant or alleged co-conspirator.

92. Any recordings, in whatever form, of calls between McGlashan and any other defendant or alleged co-conspirator.

93. All documents, witness statements, or other evidence that could be used to impeach any government witness, including but not limited to Singer, Riddell, Laura Janke, or Steve Masera.

94. All documents, witness statements, or other evidence that could support the conclusion that McGlashan did not refer Singer to any other parent.

95. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was not aware that Singer was paying someone to change his son's ACT exam answers.

96. All documents, witness statements, or other evidence that could support the conclusion that McGlashan had reason to believe that a potential donation to the University of Southern California would be valuable for the school.

97. All documents, witness statements, or other evidence that could support the conclusion that McGlashan had reason to believe that the West Hollywood Test Center to be a legitimate ACT testing site.

98. All documents, witness statements, or other evidence that could support the conclusion that Singer misled McGlashan about the nature of his relationship with ACT, Inc or about the nature of any of his affiliates' relationships with ACT, Inc.

99. All documents, witness statements, or other evidence that could support the conclusion that compensated ACT and SAT administrators have no fiduciary duty to ACT, Inc. and/or the College Board.

100. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was unwilling to facilitate, or was uninterested in facilitating, the college admission of any child other than his own.

**HUESTON HENNIGAN** LLP

ERIC ROSEN  PAGE 11
SEPTEMBER 3, 2019

101. All documents, witness statements, or other evidence that could support the conclusion that someone other than McGlashan selected the photograph or photographs of other individuals that were submitted to the University of Southern California with his son's application.

102. All documents, witness statements, or other evidence that could support the conclusion that McGlashan had no reason to believe that a photograph or photographs of another individual were submitted to the University of Southern California with his son's application.

103. All documents, witness statements, or other evidence that could support the conclusion that McGlashan's son had a legitimate learning disability.

104. All documents, witness statements, or other evidence that could support the conclusion that the medical documentation submitted on behalf of McGlashan's son was legitimate.

105. All documents, witness statements, or other evidence that could support the conclusion that none of the answers on McGlashan's son's ACT exam were changed.

106. All documents, witness statements, or other evidence that could support a belief or perception that KWF was a legitimate charitable organization.

107. All documents, witness statements, or other evidence that could support the conclusion that McGlashan believed or had reason to believe that KWF was a legitimate charitable organization.

108. All documents, witness statements, or other evidence that could support the conclusion that Singer was, or held himself out to be, a legitimate college counselor.

109. All documents, witness statements, or other evidence that could support the conclusion that McGlashan believed or had reason to believe that Singer was a legitimate college counselor.

110. All documents, witness statements, or other evidence that could support the conclusion that McGlashan was pursuing alternative avenues of facilitating his son's admission to the University of Southern California.

111. All documents, witness statements, or other evidence that could support the conclusion that Singer dissuaded McGlashan from pursuing alternative avenues of facilitating his son's admission to the University of Southern California.

112. All documents, witness statements, or other evidence that could support the conclusion that McGlashan's son could have been admitted to the University of Southern California without Singer's "side door" scheme.

113. All documents, witness statements, or other evidence that could support the conclusion that McGlashan conveyed to Singer that he did not want to pursue the "side door" scheme.

114. All documents, witness statements, or other evidence that could support the conclusion that McGlashan did not agree to have Singer facilitate his son's admission to the University of Southern California through a donation to or submission through the athletic department.

115. All documents, witness statements, or other evidence that could support the conclusion that McGlashan withdrew from any agreement with Singer to have Singer facilitate his son's admission to the University of Southern California.

116. All documents, witness statements, or other evidence that could support the conclusion that Singer presented the "side door" approach as a legitimate alternative to an ordinary University donation.

117. All documents, witness statements, or other evidence that could support the conclusion that anyone in the athletic department of the University of Southern California was aware that KWF made donations to the University's athletic programs in exchange for admissions.

118. All documents, witness statements, or other evidence that could support the conclusion that anyone in the admissions department of the University of Southern California was aware that KWF made donations to the University's athletic programs in exchange for admissions.

119. All documents, witness statements, or other evidence that could support the conclusion that anyone in the University Advancement department of the University of Southern California was aware that KWF made donations to the University's athletic programs in exchange for admissions.

120. All documents, witness statements, or other evidence that could support the conclusion that McGlashan believed that the University of Southern California was aware that KWF made donations to the University's athletic programs in exchange for admissions slots.

121. All documents, witness statements, or other evidence that could support the conclusion that donations to the University of Southern California or any of the University's programs affected admissions.

122. All documents, witness statements, or other evidence that could support the conclusion that McGlashan asked Singer not to submit an application on his son's behalf to the University of Southern California or any other University.

123. All documents, witness statements, or other evidence that could support the conclusion that McGlashan believed his payment to KWF to be lawful.

**HUESTON HENNIGAN** LLP

ERIC ROSEN  PAGE 13
SEPTEMBER 3, 2019

124. All documents evidencing any lie or misrepresentation Singer made to McGlashan.

125. All documents evidencing any lie or misrepresentation Singer made to the government.

126. All documents evidencing any lie or misrepresentation Singer made to any other person.

127. All documents reflecting ACT, Inc.'s policies for dealing with cheating or for test administrators who failed to comply with ACT's professional and ethical standards.

128. All documents reflecting the prevalence of cheating on the ACT or SAT.

129. All documents evidencing any lie or misrepresentation Riddell made to the government.

130. All documents evidencing any lie or misrepresentation Riddell made to any other person.

Please provide us these materials by September 17, 2019. We reserve our right to request further discovery in the future. Please feel free to contact us if you have any questions.

Sincerely,

*[signature]*

John C. Hueston
Attorney for William McGlashan, Jr.

5623912