# UNITED STATES DISTRICT COURT

# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br><br>DAVID SIDOO, et al.,<br><br>    Defendants. | Case No. 19-cr-10080-NMG |

**REPLY IN SUPPORT OF DEFENDANT WILLIAM MCGLASHAN, JR.'S MOTION TO COMPEL THE PRODUCTION OF MATERIALS PURSUANT TO <u>BRADY V. MARYLAND</u> AND FEDERAL RULE OF CRIMINAL PROCEDURE 16**

# **TABLE OF CONTENTS**

**Page**

REQUEST FOR HEARING ................................................................................................... 1

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

        A.    McGlashan's Son Used His Time Accommodations During the December 2017 ACT .................................................................................................... 3

        B.    McGlashan Did Not Pursue the Side Door .............................................. 5

THE COURT SHOULD COMPEL PRODUCTION OF BRADY AND RULE 16 MATERIALS ........................................................................................................................... 7

        Category 1: Evidence that McGlashan Did Not Understand Either Scheme to Involve Bribery ....................................................................... 8

        Category 2: Evidence that McGlashan Did Not Participate in the Side Door Scheme ............................................................................. 11

        Category 3: Evidence Relevant to an Entrapment Defense ..................... 13

        Category 4: Evidence that USC Was Not the Victim of Fraud .............. 13

        Category 5: Grand Jury Transcripts ......................................................... 14

CONCLUSION ...................................................................................................................... 15

...
...
...

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady v. Maryland*,
 373 U.S. 83 (1963) .................................................................................................................. 1

*Ferrara v. United States*,
 384 F. Supp. 2d 384 (D. Mass. 2005) ...................................................................................... 8

*United States v. Bagley*,
 473 U.S. 667 (1985) .............................................................................................................. 13

*United States v. Bender*,
 304 F.3d 161 (1st Cir. 2002) .................................................................................................. 10

*United States v. Martinez*,
 710 F. Supp. 415 (D.P.R. 1989) ............................................................................................ 15

*United States v. O'Brien*,
 2013 WL 1057929 (D. Mass. March 13, 2013) ............................................................. passim

*United States v. Olsen*,
 704 F.3d 1172 (9th Cir. 2013) ........................................................................................... 9, 11

*United States v. Owens*,
 933 F. Supp. 76 (D. Mass. 1996) ........................................................................................... 12

*United States v. Pesaturo*,
 519 F. Supp. 2d 177 (D. Mass. 2007) .................................................................... 7, 9, 12, 13

*United States v. Poulin*,
 592 F. Supp. 2d 137 (D. Me. 2008) ......................................................................................... 7

*United States v. Snell*,
 899 F. Supp. 17 (D. Mass. 1995) ........................................................................................... 11

*United States v. Urciuoli*,
 470 F. Supp. 2d 109 (D.R.I. 2007) ......................................................................................... 11

**Rules**

Fed. R. Crim. P. 6 ........................................................................................................................ 14

Fed. R. Crim. P. 16 ............................................................................................................... passim

## **TABLE OF AUTHORITIES (cont.)**

**Page(s)**

L.R., D. Mass. 116.1 ................................................................................................. 1, 7, 8

L.R., D. Mass. 116.2 ................................................................................................. 1, 8, 12

Defendant William E. McGlashan, Jr. ("McGlashan") respectfully submits the following reply memorandum in support of his motion seeking a Court order requiring the Government to produce material and exculpatory evidence in compliance with its discovery obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, Federal Rule of Criminal Procedure 16, and Local Rules 116.1(c)(1)(A) and 116.2.

## REQUEST FOR HEARING

McGlashan respectfully requests that this Court hold a hearing on his motion.

## INTRODUCTION

The Government relies on two remarkable propositions to justify its continued refusal to produce the exculpatory *Brady* material requested by the defense: first, that anything that can be characterized as *Jencks* witness material cannot be compelled until the latest statutory deadline, regardless of its exculpatory nature; and second, that the Government's view of the evidence determines what is *Brady*. If the Government's theory were law, no criminal defendant would ever be entitled to seek *Brady* evidence: the Government charges defendants when it believes the evidence supports their guilt, and therefore under the theory promoted in its opposition, the Government's view of guilt would govern and there would be no evidence capable of supporting a claim of innocence.

To avoid having to defend such an obviously untenable position, the Government asserts that its disagreement with the defendants' view of *Brady* "is not the basis for the instant discovery dispute." Government's Opposition to Defendants' Motions to Compel ("Opp.") at 3. Instead, the Government insists that its strident one-sided recitation of sometimes misstated facts and recalcitrance in producing additional discovery is because "virtually all the evidence the defendants seek either does not exist or has been produced." *Id.* at 4. But that is not correct. As

he has explained (and will explain again), McGlashan is entitled to multiple FBI 302 reports and interview notes which the Government is withholding. Beyond those crucial witness materials, the Government's conduct to date provides little assurance to defendants that there are no other *Brady* or Rule 16 materials in its possession: the Government belatedly and reluctantly trickled out key exculpatory evidence more than half a year after arrest, including even the bombshell disclosure that Singer told the Government that McGlashan would not be using the side door several months before the Government charged McGlashan in the alleged scheme. Just this week, the Government provided additional summaries of FBI 302 reports with information that is clearly *Brady,* such as that Igor Dvorskiy "did not remember William McGlashan's son or recall anything unusual about his test."[1] This information should have been disclosed within 28 days of McGlashan's arraignment, not more than ten months after McGlashan's arrest, after numerous defense requests and a motion to compel. While the Government has eagerly listed the millions of pages in discovery it has produced (providing a descriptive index for the first time only two weeks ago after the last status conference), it has refused to identify those materials in its possession that it has not yet produced. McGlashan therefore respectfully requests the Court's assistance in holding the Government to account.

## FACTUAL BACKGROUND

Despite characterizing their version of the facts as an "accurate overview" of the "relevant factual background," Opp. at 4-5, the Government's opposition is rife with misrepresentations,

---

[1] January 28, 2020 Letter from Justin D. O'Connell attached hereto as Ex. 1.

omissions, and overstatements.[2] These fact errors—woven throughout the Government's narrative—pointedly illustrate why the Government should not be trusted to second-guess what the defense considers exculpatory evidence. Having already set forth his narrative in detail in his opening brief, McGlashan here corrects only the most egregious misrepresentations in the Government's recitation.

### A. McGlashan's Son Used His Time Accommodations During the December 2017 ACT

Contrary to the Government's intimations, McGlashan's son took the ACT on December 9, 2017 using the double time accommodations that had been approved by his neuropsychologist. As set forth in the opening brief, McGlashan's son was granted double time accommodation based on a months-long assessment completed by a pediatric neuropsychologist years before McGlashan became acquainted with Singer.[3] When McGlashan's son took the ACT in December 2017, he used his time accommodation, VB-RECORDS-00295879,[4] he just did not need the second full day. ACT materials indicate that double time accommodations can be over a single day or multiple days, and state that students "may not need the entire allotted time." *See, e.g.,* 2017 ACT

---

[2] The Government also continues to wage prejudicial class warfare by stoking public sentiment against the relative wealth of the defendants, to include tactics such as including largely irrelevant facts pertaining to McGlashan's specific travel arrangements.

[3] McGlashan's other son was similarly tested in a rigorous assessment well before Singer's involvement and received a recommendation of extended time. Opp. Ex. V.

[4] Contrary to the Government's allegations, McGlashan's son needed more than "a few hours" to complete the exam. *See* Opp. at 10; VB-RECORDS-00295879.

WorkKeys Administration Manual; 2019-2020 ACT WorkKeys Accessibility Supports Guide.[5,6] There is nothing nefarious in McGlashan's son receiving and using his double time accommodation on some sections but not needing the full second day.

McGlashan's son received a 34 on the December 9, 2017 ACT.[7] McGlashan's son retook the test in September 2019, receiving a score of 33 which represents a "true achievement" range of 32-34. MCG00000001. Apparently considering a low-test score inculpatory, despite continuing to maintain that a high-test score is not exculpatory, the Government states that McGlashan's son "received a score of 1190 on the [PSAT] equivalent to an ACT score of approximately 24." Opp. at 9, n. 8. The PSAT score is irrelevant. The ACT is scored entirely differently from the SAT or PSAT, with students choosing one over the other because students perform differently on each test. Furthermore, because the PSAT is not considered as part of the college admissions process, many students take the PSAT without preparing in order to determine if and in what areas additional preparation is required.[8]

---

[5] These documents are available at http://www.act.org/content/dam/act/unsecured/documents/WKStateandDistrictAdminAccoms.pdf and https://www.act.org/content/dam/act/unsecured/documents/pdfs/StateTesting-WKeys-Accessibility-Supports-Guide.pdf respectively.

[6] The Government also states that Igor Dvorskiy submitted paperwork with false information to the ACT. Opp. at 10; Ex. GG. Dvorskiy's actions have no bearing on McGlashan's knowledge or intent.

[7] The Government still has not provided evidence that Riddell corrected McGlashan's test. A reference to Riddell and Dvorskiy's Rule 11 statements that the Government helped shape and furthermore has not actually produced to the defense does not suffice. *See* Opp. at 10, n. 9. Furthermore, those statements appear to conflict with the Government's recent disclosure that "Dvorskiy did not remember William McGlashan's son or recall anything unusual about his test." Ex. 1 at 2.

[8] *See*, *e.g.*, https://collegereadiness.collegeboard.org/pdf/guide-2018-act-sat-concordance.pdf ("The ACT and the SAT are different tests…[they are] not a perfect prediction of how a student

### B. McGlashan Did Not Pursue the Side Door

The Government makes much ado about McGlashan's conversations with Singer regarding the side door. But, two facts remain clear. *First*, Singer's only description of the financial arrangement involved with the side door was that there would be an initial payment of $50,000 to USC Women's Athletics, followed by another payment of $200,000. Session 4146; Opp. at 12. The Government has not provided any evidence that Singer described a bribe or suggested that the money would go anywhere other than USC. In other words, the Government has not produced any evidence that McGlashan had a basis to believe any such donation would be illegitimate.

*Second*, McGlashan did not pursue the side door scheme. Although Singer and McGlashan discussed the side door, Singer told government agents and Donna Heinel on two separate occasions that McGlashan was not pursuing the side door. On September 27, 2018, Singer told agents that McGlashan was not pursuing the side door. McGlashan's Motion to Compel ("Mot.") at Ex. 1. A few weeks later, on October 16, 2018, Singer informed Heinel that McGlashan was going a different route. DOJ-SINGER-TIII-00028907 (McGlashan has "family ties with Jimmy Lovine (sic) and various board members and is going that route."). McGlashan's actions also demonstrated that he had declined the side door: he pursued his contacts in early and mid-October, which Singer had explicitly told him he should not do if he was considering the side door. *See, e.g.,* VB-RECORDS-00158688 (October 3, 2018 email discussing meeting "yesterday" with Erica Muhl at the Iovine and Young Academy at USC); VB-RECORDS-00158682 (October 18, 2018

---

would perform on the other test….Users should avoid converting aggregate scores (e.g., mean, median, ranges) using concordance tables, as this could introduce additional sources of error."); https://www.kaptest.com/study/psat/what-does-your-psat-score-mean-for-the-sat-or-act/; https://www.usnews.com/education/blogs/college-admissions-playbook/2013/09/23/3-reasons-your-psat-score-matters.

email from Al Checchio in University Advancement to McGlashan introducing him to someone who "works closely with the admissions office"); Session 4146; Ex. 1 at 3, 5.  McGlashan's son was not submitted through the athletic subcommittee and McGlashan did not send USC or Singer any money in connection with the side door.  *See* VB-RECORDS-00124873.

The Government points to two pieces of evidence to show that McGlashan was still engaged with the side door after September 27, 2018: text messages between Singer and McGlashan and a consensually recorded call on October 24, 2018.[9]  What the messages and calls show are that from McGlashan's perspective, he was continuing to retain Singer for his legitimate counseling services and had not done anything with the side door.[10]  The only references to the scheme are by Singer, after he had begun cooperating with the Government.  To muddle the timeline, the Government points to Singer's September 30, 2018 text message to McGlashan referencing the athletics subcommittee.  But this was after Singer had begun cooperating and the message raises questions about whether, like the consensually monitored phone call, the Government almost certainly directed Singer to insert inculpatory statements, or if Singer on his

---

[9] The Government has stated in its most recent disclosure that Singer has advised that as of his statement of September 27, 2018, McGlashan still intended to pursue the side door and did not talk about potentially not pursuing the side door until October 24, 2018. Ex. 1 at 3-4.  As with its other summaries, the Government does not provide the date that this statement was made nor any context for it.  Since this new summary is contradicted not only by Singer's prior statement but by the documentary evidence that indicates both that McGlashan had decided not to pursue the side door and communicated as much to Singer prior to October 24, 2018, it only further serves to underscore why McGlashan is entitled to the full 302 reports to prepare his defense.

[10] According to the Government's newest summary disclosures, Singer advised the Government that he never saw McGlashan's son again after the October 24 call. Ex. 1 at 4.  However, Singer was still providing college counseling and advice to McGlashan's son through the end of 2018.  *See* Session 12452, DOJ-SINGER-TIII-00045232; USAO-VB-01116442.

own motivation decided to insert a reference to the side door.[11] Indeed, McGlashan did not respond or further engage about the side door or USC athletics. And, tellingly, the Government's opposition does not mention Singer's October 16 email informing Heinel that McGlashan was going his own route.[12]

### THE COURT SHOULD COMPEL PRODUCTION OF *BRADY* AND RULE 16 MATERIALS

Within 28 days of his arraignment, McGlashan was entitled not only to evidence that so much as casts doubt on his guilt, but also to evidence which is material to preparing his defense. *See* Local Rule 116.2(a)(1) & 116.1(c)(1); Fed. R. Crim. P. 16(a)(1)(E). The "materiality" showing under Rule 16 "is not a heavy burden" and is one a defendant can meet by explaining why the evidence "may alter the quantum of proof" in his favor. *See United States v. Poulin*, 592 F. Supp. 2d 137, 143-44 (D. Me. 2008) (citations and internal quotations omitted); *see also United States v. Pesaturo*, 519 F. Supp. 2d 177, 189 n.7 & 191 (D. Mass. 2007) (defendant entitled to materials which are "significant" to preparing defense). Despite this, the Government waited roughly six months to reveal even the most high-level summaries of plainly exculpatory evidence—including an admission from the Government's star cooperator that McGlashan was not participating in the crime for which he was subsequently charged.

---

[11] According to the Government, they first approached Singer on September 21, 2018 and obtained his agreement for consensual monitoring on or about September 27, 2018. Opp. at 32.

[12] Singer sent this email long before he allegedly told McGlashan about a possible investigation. *See* DOJ-SINGER-TIII-00028907 (October 16 email to Heinel); Opp. Ex. SS (October 24 call where Singer references a call "a couple days ago"); Initial Appearance Tr., ECF No. 229 at 18:10-13 (Government alleges that Singer told McGlashan he was under an IRS investigation "at the end of October").

Still, the Government persistently claims that because it has already produced a significant number of documents, it is entitled to selectively withhold specific pieces of evidence McGlashan has pointed to as either favorable, necessary to preparing his defense, or both. In so doing, the Government challenges McGlashan's factual claims, seemingly taking the position that it is not required to construe any evidence as favorable so long as it believes that it has produced sufficient evidence of his guilt. The Government also invokes the Jencks Act as a justification for withholding FBI 302 Reports *that have already been proven to contain exculpatory evidence*, insisting that it is "the practice" in this District to "disclose Jencks Act material together with 21-day material[.]" Opp. at 20. The Jencks Act and the Local Rules provide a deadline by which evidence which has not yet been produced to a defendant must be handed over. But they are not intended to be used as a shield to withhold evidence to which McGlashan is otherwise legally entitled under the United States Constitution and the Federal Rules of Criminal Procedure.

**Category 1: Evidence that McGlashan Did Not Understand Either Scheme to Involve Bribery**

The Government alleges that McGlashan knowingly conspired with Singer to defraud both the ACT and USC. Because it goes to the heart of the Government's allegations, McGlashan seeks evidence reflecting what and how much he knew about those schemes—including what he was led to believe by his purported coconspirators. This includes, without limitation, 302 Reports in which Singer or Riddell describe how they either deceived (or, alternatively, were forthcoming with) McGlashan. The former would cast doubt on McGlashan's guilt, while the latter is material to preparing his defense. Either way, McGlashan was entitled to that information within 28 days of his arraignment. *See* Fed. R. Crim. P. 16(a)(1)(E); L.R. 116.2(a)(1) & 116.1(c); *Ferrara v. United States*, 384 F. Supp. 2d 384, 387-88, 423 (D. Mass. 2005) (government committed *Brady* error by

withholding memorandum reflecting witness' admission that defendant did not participate in crime for which he was charged).

Ignoring the abundance of caselaw cited in McGlashan's motion, the Government contends that it is entitled to withhold these materials because they are "*inculpatory* witness statements" and therefore cannot be "material to preparing the defense." Opp. at 28. Even if the Government were correct that those 302 Reports contain nothing favorable to McGlashan—a proposition that is highly unlikely in light of what the Government has begrudgingly revealed to-date—the Government is plainly wrong that inculpatory witness statements cannot be material to preparing a defense. Numerous courts in this Circuit have confirmed that whether evidence is "material" within the meaning of Rule 16 turns not on whether evidence is exculpatory or inculpatory, but simply on whether or not "there is a reasonable probability that the disclosure of [the] evidence will affect the outcome of the case." *Pesaturo*, 519 F. Supp. 2d at 191-92 (rejecting government's argument that it should not be required to produce Form 302 Reports containing "inculpatory rather than exculpatory information" and granting motion to compel those Reports because "[t]he text of Rule 16 … contains no limitation restricting its application to favorable information.").

Perplexingly, the Government also implies that it is not required to produce this evidence because there is *other* evidence reflecting what McGlashan knew or did not know, such as Riddell's Rule 11 statement. Opp. at 30-31. Putting aside the absurdity of characterizing a government-crafted statement of an admitted felon and cooperator as compelling evidence, the Government does not (and cannot) cite any authority that entitles it to unilaterally withhold material evidence because *other* types of evidence exist, whether in court filings or via a Government production. *See United States v. Olsen*, 704 F.3d 1172, 1183 n.3 (9th Cir. 2013) (a "trial prosecutor's speculative prediction about the likely materiality of favorable evidence …

should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial"); *United States v. O'Brien*, 2013 WL 1057929, at * n. 8 (D. Mass. March 13, 2013) ("The government has agreed to produce spreadsheets containing only 'some' of the information responsive to [the request], without explaining any basis for doing so.  If the government has in its possession 'all' of the requested information, it shall provide 'all' of the information to the defendants.").

The Government further claims that it may withhold evidence that McGlashan's son had a legitimate need for a testing accommodation because McGlashan already knows that his son had a learning disability.  *See* Opp. at 29 (citing *United States v. Bender*, 304 F.3d 161 (1st Cir. 2002)). Taken to its logical extension, the Government apparently believes that only defendants who are ignorant of their own innocence are entitled to *Brady* material.  Not so.  It may be true that *evidence* which is already known to a defendant may not constitute *Brady*.  *See Bender*, 304 F.3d at 161 (defendant not entitled to own medical records).  But in most cases, *Brady* material will necessarily reflect a fact already known to a defendant.  To the extent the Government has evidence supporting the fact that McGlashan's son had a legitimate need for the accommodations he sought—such as Singer's statements to that effect—McGlashan is entitled to that evidence.[13]  *See O'Brien*, 2013 WL 1057929, at *6, 9 (granting motion to compel evidence that defendants were qualified for

---

[13] The Government's assertion that it has "produced the *relevant* evidence in its possession, custody, or control" (Opp. at 29) (emphasis added) begs the question of what relevance calls they may have made to withhold evidence, since they still have not made any clear statement regarding what they might have beyond the 302s that has not been produced.

- 10 -

positions they held in case charging rigged hiring system, including "reports, memorandum, and notes of all individuals who were interviewed informally").[14]

It is beyond dispute that evidence regarding what McGlashan knew with respect to Singer's methods not only could affect—but would likely determine—the outcome of the trial here. McGlashan is entitled to inspect and evaluate that evidence.

**Category 2: Evidence that McGlashan Did Not Participate in the Side Door Scheme**

McGlashan also seeks evidence reflecting the fact that he did not participate in the side door scheme for which he is charged. Such evidence is plainly exculpatory under *Brady* and its progeny. After months of evading McGlashan's discovery requests, the Government finally produced one sentence acknowledging that in September 2018, Singer advised the Government that McGlashan would not be using the side door. The Government has provided no further details about the substance or context of that conversation, insisting that it is "Jencks material to which McGlashan is not now entitled."[15] Opp. at 32. But courts in this Circuit have made clear that the Government may not use the Jencks Act as a shield to evade its *Brady* obligations. *See United States v. Snell*, 899 F. Supp. 17, 19-21 (D. Mass. 1995) (*Brady* material "must be turned over immediately" notwithstanding Jencks Act because it is "inconceivable that a statutory obligation

---

[14] The Government does not even purport to explain its belief that evidence regarding McGlashan's son's legitimate need for testing accommodations would not be favorable to McGlashan. *See* Opp. at 29.

[15] The Government also seemingly suggests that it is not required to disclose the Report because it has thus far "disclosed the relevant information from that report." Opp. at 32. But it is not for the Government to decide what is relevant and what is not. *See Olsen*, 704 F.3d at 1183 n. 3; *see also United States v. Urciuoli*, 470 F. Supp. 2d 109, 116 (D.R.I. 2007) (acknowledging that summaries of 302s are "troublesome" because they might "omit previous [inconsistent] statements" or "prevent counsel from attempting to show how a statement might have been influenced by events occurring around the time that the statement was made").

should supersede a constitutional one"); *see also United States v. Owens*, 933 F. Supp. 76 at 84 (D. Mass. 1996) (compelling government to produce all exculpatory information, even if covered by Jencks Act, because "[w]here a defendant's constitutional due process rights under *Brady* clash with the procedural dictates of the Jencks Act, the [constitutional] rights afforded to the defendant must prevail"); *Pesaturo*, 519 F. Supp. 2d at 189 (granting pretrial motion to compel 302 Reports containing *Brady* and Rule 16 material); *O'Brien*, 2013 WL 1057929, at *5 (requiring government to produce exculpatory information even if such material also qualifies as Jencks Act material). [16]

This week, the Government provided no further details about that September 27 statement, but produced a confusing, undated summary of an apparently subsequent statement or statements in which Singer seemed to be attempting to recant his September 27 proffer. Ex. 1 at 3-4. Yet, even in this alternative version, Singer reported that McGlashan talked about "potentially not pursuing the side door." McGlashan needs all of the 302 reports that discuss his decision not to pursue the side door, as well as any additional evidence reflecting what he conveyed to Singer about his unwillingness to participate in the side door. *See Pesaturo*, 519 F. Supp. 2d at 191-2 (granting motion to compel 302 reports, even where not exculpatory); *O'Brien*, 2013 WL 1057929, at *9. Although the Government claims that it has produced "all text messages, e-mails, and calls in its possession, custody or control between McGlashan and Singer," Opp. at 31, the communication(s) that would have formed the basis of Singer's September 27 report to the Government have not been produced or explained. If the Government truly has no other evidence in its possession on this topic other than the 302 reports, that is yet more reason why McGlashan

---

[16] Furthermore, Local Rule 116.2(b)(5) instructs that where an item of exculpatory evidence can be deemed to fall into different categories requiring different production dates, it shall be deemed to fall into the category that requires the earliest production.

needs those reports. They may contain details that the Government considers irrelevant but McGlashan would consider significant to preparing his defense.

**Category 3: Evidence Relevant to an Entrapment Defense**

McGlashan also seeks evidence reflecting when the Government began to use Singer as an agent or when Singer first suspected that he was being investigated by the Government because such evidence is relevant to an entrapment defense. *See Pesaturo*, 519 F. Supp. 2d at 191 (granting motion to compel information concerning informant's cooperation under *Brady* and Rule 16). The Government makes no effort to explain why it should not be required to produce any such evidence, instead stating summarily that it "has no information suggesting that Singer was aware of the government's investigation prior to September 21, 2018." Opp. at 32. But McGlashan does not have any evidence reflecting what actually happened on September 21, 2018. Contrary to the Government's claim, the general statements regarding "late September" contained in the Complaint affidavit do not suffice to satisfy the Government's discovery burden—particularly where McGlashan has specifically asked for more information. *See United States v. Bagley*, 473 U.S. 667, 682-83 (1985) ("[T]he more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption.").

**Category 4: Evidence that USC Was Not the Victim of Fraud**

McGlashan also seeks information showing that USC was familiar with Singer and his method of getting students admitted to USC (or that McGlashan believed as much). The Government claims that it has no such evidence and has already "produced all the communications in which Singer discussed the side door." Opp. at 33. But the Government has not produced the

- 13 -

FBI 302 Reports in which Singer explains how he operated his side door scheme, the context of his connections with USC's coaches and administrators, or the details of his conversations with USC—either with respect to McGlashan's son or any other child. Nor has the Government provided 302 Reports of any other witness. The Government also fails to recognize the possibility that there might be evidence beyond witness statements and direct communications between McGlashan and Singer that might pertain to USC. McGlashan is entitled to a full picture of Singer's relationship with USC so that he can prove that USC was not defrauded. *See O'Brien*, 2013 WL 1057929, at *7 (allowing motion to compel evidence that probation department allegedly defrauded by defendants actually permitted consideration of legislative recommendations and sponsorship as a factor in determining which candidate was most qualified).

**Category 5: Grand Jury Transcripts**

In an apparent attempt to avoid judicial scrutiny over the proceedings surrounding the return of the Third Superseding Indictment ("TSI"), the Government obtained a Fourth Superseding Indictment ("FSI") the morning its Opposition was due and corrected or otherwise altered the main errors identified by McGlashan.[17] Ignoring the clearly articulated basis for McGlashan's request, the Government construes the request as a challenge to the sufficiency of the evidence. It is not. McGlashan's challenge is to the accuracy of the Government's presentation to the grand jury. Because such a knowing presentation of false facts could be grounds for dismissal, McGlashan is entitled to, at minimum, *in camera* review of the transcript. *See* Fed. R.

---

[17] The Government did not correct an additional inaccuracy that McGlashan just noticed persists in both the TSI and FSI. Both the TSI and FSI state that McGlashan's son's ACT score was submitted to Northeastern on or about October 24, 2018. TSI ¶¶ 178, 320; FSI ¶¶ 200, 376. The application and score were submitted on October 22, 2018. *See* VB-RECORDS-00114933 at VB-RECORDS-00114997; USAO-VB-01107547-48; VB-RECORDS-00355608; Compl. ¶ 140, n. 16.

Crim. P. 6(e)(3)(E)(ii); *see also United States v. Martinez*, 710 F. Supp. 415, 417 (D.P.R. 1989) (dismissal warranted where prosecutor was "either negligent in allowing [false testimony] to go to grand jury or condon[ing false testimony]."). McGlashan also seeks *in camera* review of the grand jury transcripts for the FSI to determine what, if anything, the Government told the grand jury about the corrections.

## CONCLUSION

For the foregoing reasons, as well as those set forth in his initial motion, McGlashan respectfully requests that this Court order the Government to produce the requested materials.

Dated: January 31, 2020

Respectfully submitted,

John C. Hueston (*pro hac vice*)
jhueston@hueston.com
Marshall Camp (*pro hac vice*)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

*/s/ Jack W. Pirozzolo*
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

Joan M. Loughnane (*pro hac vice*)
jloughnane@sidley.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5567


*Attorneys for Defendant
William McGlashan, Jr.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2020, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Jack W. Pirozzolo*

Jack W. Pirozzolo