# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>v.<br><br>DAVID SIDOO, et al.,<br><br>  Defendants. | Case No. 19-cr-10080-NMG<br>(Leave to file granted on 2/27/2020) |

### DEFENDANT WILLIAM E. MCGLASHAN, JR.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

Defendant William E. McGlashan, Jr. ("McGlashan") respectfully submits the following supplemental memorandum in support of his motion seeking a Court order requiring the Government to produce material and exculpatory evidence in compliance with its discovery obligations pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, Federal Rule of Criminal Procedure 16, and Local Rules 116.1(c)(1)(A) and 116.2.

### INTRODUCTION

For the past several months, McGlashan has asserted his constitutional right to exculpatory evidence through discovery requests that he has sent to the Government, followed by a motion to compel that is now fully briefed and pending before this Court. At each turn, the Government has rebuffed McGlashan's efforts by maintaining that it has complied with its obligations, including an emphatic statement as late as February 7, 2020 that it "is *not* withholding exculpatory evidence." ECF No. 834 at 2 (emphasis in original). Yesterday's disclosures reveal those representations as patently false. The Government now belatedly admits that it has possessed since October 2018 clear evidence that McGlashan elected not to pursue the side door scheme, and that FBI agents

instructed their primary cooperator to manufacture evidence and to create a case for bribery when no such case existed.[1] These revelations fatally undercut the Government's continued, blanket assertions that no exculpatory evidence exists and therefore that this Court need inquire no further. It is now time for the Government to make the requested disclosures to the defense and for *in camera* review of any purported sensitive documents.

Yesterday's key disclosures consist of iPhone notes written by Rick Singer (the Government's main cooperating witness), which relate his discussions with FBI investigators and other Government agents. In just one example of a clearly exculpatory note, Singer describes a "loud and abrasive call" where the agents "continue to ask [him] to tell a fib and not restate what [he] told [his] clients as to where there [sic] money was going - to the program not the coach and that it was a donation."[2] In other words, the Government agents wanted Singer to state that he had told his clients that any money for the side door was a payment directed to the coach, rather than a donation sent to the schools' program. Singer's notes further reference his belief that agents were "asking [him] to bend the truth," and described an experience where someone named Liz raises her voice at him regarding "asking each person to agree to a lie [he] was telling them." *Id.*

In another note dated October 5, 2018, Singer writes that McGlashan is "no longer" pursuing the side door. *Id.* This disclosure further supports Singer's previous statement on September 27, 2018 that McGlashan had decided not to pursue the side door and was instead using his own connections. ECF No. 703 at Ex. 1. This new disclosure also further undermines the dubious value of Singer's December 2019 revisionist history regarding the side door—a clear

---

[1] February 26, 2020 Letter from Eric. S. Rosen, attached hereto as Ex. 1.

[2] Redacted excerpt of disclosure accompanying Ex. 1, attached hereto as Ex. 2.

Government-prompted statement months after the events in question and after the filing of defense motions which began to reveal exculpatory evidence of McGlashan's refusal to proceed with the side door scheme. *See* ECF Nos. 806 at 6-7, 834 at 1.

These recent disclosures raise serious concerns regarding the Government's conduct throughout this case, both in terms of its initial investigation and prosecution, as well as its fulfillment of its obligations to produce exculpatory material to defendants. McGlashan therefore files this supplemental memorandum requesting that the Court compel the Government to: produce all exculpatory material in its possession; produce all evidence related to any complaints or concerns raised by any cooperating witnesses; identify all material in its possession that it has not yet produced; and produce for *in camera* review any material it has designated as privileged.

## PROCEDURAL BACKGROUND

On September 3, 2019, McGlashan first explicitly requested all Rule 16 and *Brady* material in the Government's possession, custody or control. *See* ECF No. 703 at Ex. 3. Fully cognizant of the actual substance of his conversations with Singer—and the fact that his knowledge regarding Singer's actions was a far cry from what the Government alleged against him—McGlashan specifically and explicitly requested all exculpatory evidence, including without limitation, evidence that could support the conclusions that "McGlashan conveyed to Singer that he did not want to pursue the 'side door' scheme;" "McGlashan was pursuing alternative avenues of facilitating his son's admission to the University of Southern California;" and "McGlashan believed that the University of Southern California was aware that KWF made donations to the University's athletic programs in exchange for admissions slots." *Id.* at 10-12. McGlashan also explicitly sought "[a]ll documents evidencing any lie or misrepresentation Singer made to McGlashan" or to "any other person." *Id.* at 13.

The Government stonewalled McGlashan's repeated requests for this evidence, insisting on more than one occasion that it had complied with its *Brady* obligations. *See, e.g.,* ECF No. 703 at Exs. 1, 4.  After several more rounds of correspondence—and months of failed attempts to obtain evidence McGlashan knew existed—McGlashan finally moved to compel on December 18, 2019.  ECF Nos. 696, 703.  Among other things, McGlashan moved to compel any evidence in the Government's possession that he "did not understand [the side door] scheme to involve bribery."  ECF No. 703 at 23.   McGlashan explained to the Court that "Singer never explained that the money would be going to any individual, much less to facilitate a fraud as part of a quid pro quo," and that Singer "explained only that the money would be going to a USC department—a financial transaction that could be a legitimate donation."  *Id.*

The Government opposed McGlashan's motion, insisting that his factual assertions were untrue.  *See* ECF No. 736 at 28 ("[McGlashan] contends that Singer 'never explained' that his side-door payment would be used to 'facilitate a fraud as a part of a *quid pro quo.* [] McGlashan's factual contentions are untrue[.]").  More importantly, however, the Government represented that "virtually all the evidence the defendants seek either does not exist or has already been produced" and that it "is *not* withholding exculpatory evidence."  *Id.* at 4; ECF No. 834 at 2.

However, on February 26, 2020, the Government disclosed a report from Singer's iPhone, containing notes that Singer took which appear to memorialize his conversations with FBI investigators and other Government agents ("February 26 Disclosures").  As explained in its cover letter, the Government has been aware of this information since at least October 28, 2018.  Ex. 1.

However, supposedly believing the notes were privileged,[3] the Government did not review them further until it began its privilege review process in August 2019. *Id.* The Government produced the notes yesterday, after Singer's counsel agreed to waive privilege. *Id.*

**February 26 Disclosures**

The February 26 Disclosures make clear that the Government had patently exculpatory material in its possession—material which McGlashan has explicitly moved to compel—and that it failed to so much as allude to the existence of such material. Instead, and extraordinarily, the Government represented that such materials did not exist. The February 26 Disclosures provide evidence in at least two categories of information that are directly exculpatory and material to McGlashan's defense: (1) evidence that the Government required Singer to "lie" and "bend the truth" about his clients' knowledge and involvement in schemes; and (2) additional evidence that McGlashan did not pursue the side door.

A. **Government Agents Asked Singer To Lie**

Singer appeared to take notes regarding his many conversations and interactions with Government agents. Ex. 2. His notes include summaries of several interactions where the Government requested that he lie:

> Loud and abrasive call with agents. They continue to ask me to tell a fib and not restate what I told my clients as to where there [sic] money was going - to the program not the coach and that it was a donation and they want it to be a payment.
>
> I asked for a script if they want me to ask questions and retrieve responses that are not accurate to the way I should be asking the questions. Essentially they are asking me to bend the truth which

---

[3] The Government's privilege claim is suspect at best. Several of the initial paragraphs on which the Government based its privilege claim describe calls and interactions with Government agents and Singer's clients. Exs. 1 and 2.

> is what they asked me not to do when working with the agents and Eric Rosen.
>
> Liz raised her voice to me like she did in the hotel room about agreeing with her that everyone Bribed the schools. This time about asking each person to agree to a lie I was telling them. *Id.*

In particular, the February 26 Disclosures reveal that Government agents pressured Singer to lie about what he told clients regarding the recipient of money related to the side door. Singer thus requested a script to use since the Government was asking him to "ask questions and retrieve responses that are not accurate." This seriously undermines the veracity and probative value of Singer's statements on the consensually-recorded calls, including the October 24, 2018 call with McGlashan, on which the Government has heavily relied. *See, e.g.,* ECF No. 736 at 14, 31.

Singer's notes also describe the Government's desire to "nail" one defendant "at all costs." Ex. 2. With respect to another defendant, Singer explained that it was probably too late to do the side door at one school. *Id.* The Government told Singer "to take another school [he] had a relationship [with] just to entrap him despite him never asking for any other school." *Id.*

### B.      McGlashan Did Not Pursue the Side Door

The February 26 Disclosures provide further exculpatory evidence regarding both McGlashan's understanding of the alleged side door scheme and his ultimate decision not to pursue it. *First*, as McGlashan's Motion to Compel makes clear, Singer's only description to McGlashan of the financial aspect of the side door describes merely a donation to USC. Session 4146 ($50,000, which "goes to [USC] Women's Athletics…[a]nd then the other 200 comes in March"). The recent disclosure reconfirms that Singer told his clients, including McGlashan, that money would be a donation to the school program: "Loud and abrasive call with agents. They continue to ask me to tell a fib and not restate what I told my clients as to where there [sic] money was going - to the program not the coach and that it was a donation." Ex. 2.

*Second*, McGlashan did not pursue the side door scheme. In a note on Singer's iPhone dated October 5, 2018, Singer writes about McGlashan: "Spoke about the SAT but want [ ] the son for side door which I explained is no longer as Bill's friends are helping not only to get [ ] into the Dr Dri [sic] program but now helping get into USC. So nothing her [sic] but SAT."

Singer first told Government agents on September 27, 2018 that McGlashan was not pursuing the side door, and would instead be "going through his own connections." ECF No. 703 at Ex. 1. The Government did not disclose this to McGlashan until October 31, 2019. *Id.* Although the Government already had a statement from Singer about McGlashan's lack of involvement in the side door, the Government met with Singer in December 2019, presumably in an attempt to reshape Singer's testimony. *See* ECF No. 834 at 1. In January 2020, the Government disclosed that Singer revised his statement in the December 2019 meeting to say that McGlashan was still pursuing the side door as of September 27, 2018, and never told him to stop pursuing it. ECF No. 806 at Ex. 1. But now, as Singer's iPhone notes confirm, Singer's original statement—which was contemporaneous with the events in question and therefore more reliable—was correct: McGlashan decided not to pursue the side door, and instead pursued his own connections.[4]

---

[4] As stated in McGlashan's Motion to Compel and Reply, there is a panoply of other evidence supporting Singer's original statement that McGlashan was not pursuing the side door, including an October 16, 2018 email to Donna Heinel stating that McGlashan was going his own route, along with additional evidence that McGlashan was pursuing his contacts in early and mid-October, which Singer had explicitly told him he should not do if he was considering the side door. *See, e.g.,* ECF No. 806 at 5-6; DOJ-SINGER-TIII-00028907; VB-RECORDS-00158688; VB-RECORDS-00158682; Session 4146. McGlashan's son was not submitted through the athletic subcommittee and McGlashan did not send USC or Singer any money in connection with the side door. *See* VB-RECORDS-00124873.

## MCGLASHAN REASSERTS HIS REQUEST FOR *BRADY* MATERIALS AND REQUESTS *IN CAMERA* REVIEW OF PURPORTEDLY PRIVILEGED DOCUMENTS IN THE GOVERNMENT'S POSSESSION

### A. Legal Standard

The Government has a constitutional "duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 266 (1st Cir. 2011) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). The Government's disclosure obligations under *Brady* apply "regardless of request," so long as "favorable evidence is material." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995). In this District, the Government must produce directly exculpatory *Brady* material within 28 days of arraignment. *See* Local Rules 116.2(a)(1) and 116.1(c)(1). Within 28 days of his arraignment, McGlashan was entitled not only to evidence that so much as casts doubt on his guilt, but also to evidence which is material to preparing his defense. *See Id.*; Fed. R. Crim. P. 16(a)(1)(E).

### B. Requested Materials

The February 26 Disclosures make clear that the Government continues to withhold additional exculpatory materials that McGlashan has now specifically requested on numerous occasions—including through his Motion to Compel. Though it should go without saying, McGlashan files this supplemental memorandum to specify that his request in his Motion to Compel for the production of *Brady* materials necessarily encompasses any materials related to the February 26 Disclosures, including any complaints or concerns raised by any cooperating witness, which may be reflected in their own notes, Government communications, or 302 Reports.

The Government's proffered explanation for withholding the plainly exculpatory February 26th materials is wholly unavailing. *See* Ex. 1. The Government has perhaps wisely

not even attempted to explain how Singer's notes to himself of conversations with the Government could somehow be characterized as privileged. But even if the Government can articulate some sort of tortured privilege rationale regarding the notes themselves, nothing excuses the Government from providing a summary of the exculpatory information. And the Government cannot explain or excuse its prior misleading representation that no such materials existed *at all*.

Because the Government has blatantly shirked its obligation to voluntarily provide *Brady* materials, McGlashan requests that the Government provide a log of any additional evidence in its possession that it has not yet produced. To the extent the Government claims that such materials are being withheld on the basis of privilege, McGlashan requests that the Government present those materials to the Court for *in camera* review.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in his initial motion and accompanying reply, McGlashan respectfully requests that this Court order the Government to produce the requested materials, and provide privileged materials to the Court for *in camera* review.

Dated: February 27, 2020                                    Respectfully submitted,

|  |  |
|---|---|
| John C. Hueston (*pro hac vice*)<br>jhueston@hueston.com<br>Marshall Camp (*pro hac vice*)<br>mcamp@hueston.com<br>HUESTON HENNIGAN LLP<br>523 W. 6th Street, Suite 400<br>Los Angeles, CA 90014<br>(213) 788-4340 | */s/ Jack W. Pirozzolo*<br>Jack W. Pirozzolo (BBO # 564879)<br>jpirozzolo@sidley.com<br>SIDLEY AUSTIN LLP<br>60 State Street, 36th Floor<br>Boston, MA 02109<br>(617) 223-0304<br><br>Joan M. Loughnane (*pro hac vice*)<br>jloughnane@sidley.com<br>SIDLEY AUSTIN LLP<br>787 7th Avenue<br>New York, NY 10019<br>(212) 839-5567<br><br>*Attorneys for Defendant*<br>*William McGlashan, Jr.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2020, this document, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                             */s/ Jack W. Pirozzolo*

                                             Jack W. Pirozzolo