```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3   UNITED STATES OF AMERICA,          )
                          Plaintiff     )
 4                                      )
     vs.                                )   No. 1:19-cr-10080-NMG-15
 5                                      )
     WILLIAM MCGLASHAN, JR.,            )
 6                        Defendant.    )
                                        )
 7                                      )
                                        )
 8                                      )
                                        )
 9


10


11           BEFORE THE HONORABLE NATHANIEL M. GORTON
                  UNITED STATES DISTRICT JUDGE
12                      RULE 11 HEARING


13


14


15
              John Joseph Moakley United States Courthouse
16                      Courtroom No. 4
                       One Courthouse Way
17                 Boston, Massachusetts 02210

18
                       February 10, 2021
19                         3:01 p.m.

20


21
                    Kristin M. Kelley, RPR, CRR
22                     Official Court Reporter
              John Joseph Moakley United States Courthouse
23                 One Courthouse Way, Room 3209
                    Boston, Massachusetts 02210
24                  E-mail: kmob929@gmail.com

25           Mechanical Steno - Computer-Aided Transcript
```

```
 1    APPEARANCES:

 2

 3            Justin D. O'Connell

 4            United States Attorney's Office MA

 5            1 Courthouse Way

 6            Suite 9200

 7            Boston, MA 02210

 8            617-748-3100

 9            Email: Justin.o'connell@usdoj.gov

10            for Plaintiff.

11

12

13            John C. Hueston

14            Hueston Hennigan

15            620 Newport Center Drive

16            Suite 1300

17            Newport Beach, CA 90014

18            949-226-6740

19            Email: Jhueston@hueston.com

20            for Defendant.

21

22

23

24

25
```

```
 1   APPEARANCES:

 2

 3           Jack W. Pirozzolo

 4           Sidley Austin LLP

 5           60 State Street

 6           34th Floor

 7           Boston, MA 02109

 8           617-223-0304

 9           Email: Jpirozzolo@sidley.com

10           for Defendant.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK:  This is Criminal Action No. 19-10080, the United States of America versus William McGlashan, Junior.

Would counsel please introduce themselves for the record.

MR. O'CONNELL:  Good afternoon, your Honor.  Justin O'Connell for the government.

THE COURT:  Mr. O'Connell, good afternoon.

MR. PIROZZOLO:  Good afternoon, your Honor.  Jack Pirozzolo for the defendant, William McGlashan.

THE COURT:  Good afternoon to you, Mr. Pirozzolo, and Mr. McGlashan.

MR. HUESTON:  Good afternoon, your Honor.  It's John Hueston on behalf of Mr. McGlashan, and I'm present with Mr. McGlashan.

THE COURT:  All right.  I'm sorry.  I didn't get the last name.  Say that again, please.

MR. HUESTON:  H-U-E-S-T-O-N.

THE COURT:  Mr. Hueston, yes.  I have you here.  Good afternoon to you.  And good afternoon to Mr. McGlashan.

THE DEFENDANT:  Good afternoon, your Honor.

THE COURT:  We're here, as I understand it, to take a change of plea, is that correct, Mr. Hueston?

MR. HUESTON:  Yes, it is, your Honor.

THE COURT:  First, I need to have your client sworn.

1         (William McGlashan, sworn.)

2         THE COURT:  Before we start, I need to note for the

3  record that we are proceeding today with this change of plea by

4  Zoom, pursuant to a general order of this Court, the National

5  Emergency Act, and the CARES Act.  These regulations relate to

6  the coronavirus pandemic and authorize under certain

7  circumstances, such as these, the conduct of criminal

8  proceedings by means of videoconferencing.  As the presiding

9  judge, I am satisfied that we should proceed this way because

03:03 10  both the government and the defendant have requested to go

11  forward with this change of plea and believe that this is a

12  matter of importance.  In the interest of justice, it ought not

13  be delayed.  That leaves only the defendant's consent to go

14  forward by videoconference to be determined.

15         Mr. McGlashan, do you understand what I have just said

16  about proceeding with this change of plea by videoconference?

17         THE DEFENDANT:  Yes, I do, your Honor.

18         THE COURT:  Have you discussed with your attorney your

19  right to consent or not to consent to proceed in this fashion?

03:04 20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you now in open court agree to waive

22  your right to have an in person conference?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  I declare, therefore, that the defendant

25  has consented to go forward by videoconferencing and that, in

1  the interest of justice, this change of plea ought not be

2  delayed.  Thus, we are going to go forward using Zoom

3  technology.

4      This is still a public hearing and these proceedings

5  are being made available to members of the public, the press,

6  and interested parties via Zoom technology.  Those attendees

7  are not, of course, permitted to participate in any other way

8  in these proceedings.

9      I also remind all of you who are attending this

03:04 10  videoconference that Federal Rule of Criminal Procedure 53 and

11  local Rule 83.3 prohibit photographing, recording, and

12  broadcasting this proceeding, and any violation of these rules

13  will subject the wrongdoer to sanctions and/or loss of press

14  privileges.

15      Mr. McGlashan, do you understand that you are now

16  under oath and that if you answer any of my questions falsely,

17  those answers may later be used against you in a prosecution

18  for perjury or making a false statement?  Do you understand

19  that?

03:05 20      THE DEFENDANT:  Yes, your Honor.

21      THE COURT:  Would you please state your actual name

22  for the record.

23      THE DEFENDANT:  William Earl McGlashan, Junior.

24      THE COURT:  How old are you, Mr. McGlashan?

25      THE DEFENDANT:  I'm 57.

1          THE COURT:  What is your educational background?

2          THE DEFENDANT:  I received a BA in history from Yale

3     University and an MBA from the Stanford Graduate School of

4     Business.

5          THE COURT:  Have you ever been treated for any mental

6     illness or addiction to narcotic drugs of any kind?

7          THE DEFENDANT:  No, I have not.

8          THE COURT:  Are you presently under the influence of

9     any drug, medication or alcoholic beverage of any kind?

03:06 10          THE DEFENDANT:  No, I am not.

11          THE COURT:  Have you received a copy of the indictment

12     in this case, that is the written charges made against you, and

13     have you discussed those charges and the case in general with

14     Mr. Hueston and Mr. Pirozzolo as your attorneys?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And in your own words, Mr. McGlashan, what

17     do you understand that you are being charged with here this

18     afternoon?

19          THE DEFENDANT:  Wire fraud and honest services wire

03:06 20     fraud, your Honor.

21          THE COURT:  Are you fully satisfied with the counsel,

22     representation, and advice given to you by both Mr. Hueston and

23     Mr. Pirozzolo as your attorneys in this case?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  I understand a written plea agreement has

1    been entered into between you and the government.  I would ask

2    Mr. O'Connell to briefly outline the provisions of that

3    agreement for you and for the Court.

4         MR. O'CONNELL:  Yes, your Honor.  The defendant,

5    William McGlashan, agrees to plead guilty to Count 7 of the

6    Fourth Superseding Indictment.  That charges him with wire

7    fraud and honest services wire fraud in so far as that count

8    charges a scheme and an artifice to defraud the ACT, Inc. of

9    standardized tests and test scores and of its right to the

03:07 10   honest and faithful services of its test administrators.

11        The U.S. Attorney agrees to dismiss Counts 1, 2, and 3

12   at the time of sentencing.

13        The defendant's plea, with the consent of the U.S.

14   Attorney, will be a conditional plea in which he reserves the

15   right to appeal the denial of his motion to dismiss Count 7 of

16   the Fourth Superseding Indictment, that motion being docket

17   No. 1023, only to the extent that motion argued either, first,

18   that test scores, as a matter of law, constitute property for

19   the purpose of the mail or wire fraud statutes and to the

03:07 20   extent that standardized tests might be considered property

21   under the mail or wire fraud statutes the indictment did not

22   adequately allege facts establishing a scheme for fraudulently

23   obtained standardized tests in this case, and, second, that the

24   indictment did not adequately allege facts establishing that

25   test administrators owe a fiduciary duty to testing companies

1    in this case.

2          The defendant will have the right to withdraw his

3    guilty plea should he prevail on that appeal.

4          The U.S. Attorney's office further agrees that based

5    on the information known to the office at this time, no further

6    charges will be brought against the defendant in connection

7    with the conduct set forth in the indictment.

8          The maximum penalties are set forth for Count 7, which

9    is the wire fraud and honest services wire fraud count.  Those

03:08 10   maximum penalties are incarceration of up to 20 years,

11   supervised release for 3 years, a fine of $250,000, or twice

12   the gross gain or loss from the offense, a mandatory Special

13   Assessment of $100, restitution and forfeiture to the extent

14   charged in the indictment.

15          This plea is being tendered pursuant to Federal Rule

16   of Criminal Procedure 11(c)(1)(C), which requires the Court to

17   accept the agreed upon disposition and judgment.  If the Court

18   rejects any aspect of the plea agreement, the U.S. Attorney may

19   deem the agreement null and void.  The defendant may not

03:09 20   withdraw his guilty plea unless the court rejects the plea

21   agreement.  The U.S. Attorney will take the position that the

22   defendant's total offense level is 16, based on a bribe amount

23   of more than $250,000 but less than $550,000, which results in

24   a guideline range of 21 to 27 months.

25          The parties agree in the plea agreement that the

following is a reasonable and appropriate disposition for this

case:  Incarceration for a period of 3 months; a fine of

$250,000; 24 months of supervised release, which is to include

250 hours of community service; a special assessment;

restitution to be determined at the sentencing; and forfeiture.

The defendant waives his right to appeal his

conviction and sentence except as set forth in paragraph 1 of

the agreement, assuming that the Court accepts the agreed upon

disposition in the plea agreement.  However, the defendant also

retains his right to appeal based on claims of ineffective

assistance of counsel or prosecutorial misconduct.

The defendant waives his right to claim attorney's

fees under the Hyde Amendment.

Finally, your Honor, the U.S. Attorney can withdraw

from this plea agreement if the defendant moves to withdraw his

plea of guilty, if the court rejects the parties' agreed upon

disposition, or if the defendant breaches the plea agreement.

THE COURT:  All right.  Thank you, Mr. O'Connell.

Mr. McGlashan, are those the terms of your agreement

with the government as you understand them?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Has anyone made any other or different

promise or assurance to you of any kind in an effort to make

you plead guilty here this afternoon?

THE DEFENDANT:  No, your Honor.

1       THE COURT:  Has anyone attempted to force you to plead

2  guilty here today?

3       THE DEFENDANT:  No.

4       THE COURT:  You understand the offense to which you

5  are pleading guilty is a felony, and if that plea is accepted,

6  you'll be judged guilty of that offense and such adjudication

7  may deprive you of valuable civil rights, such as the right to

8  vote, the right to hold public office, the right to serve on a

9  jury, the right to possess any kind of firearm?  Do you

03:11 10  understand all of that?

11       THE DEFENDANT:  Yes, your Honor.

12       THE COURT:  Then once again, Mr. O'Connell, will you

13  remind the defendant of the maximum possible penalties that he

14  faces and if there are any mandatory minimums.

15       MR. O'CONNELL:  Yes, your Honor.  There are no

16  mandatory minimums in this case, but the maximum penalties are

17  incarceration for up to 20 years, supervised release for

18  3 years, a fine of $250,000, or twice the gross gain or loss

19  from the offense, whichever is greater, a mandatory Special

03:12 20  Assessment of $100, restitution, and forfeiture to the extent

21  charged.

22       THE COURT:  Mr. McGlashan, do you understand the

23  possible consequences of your plea here this afternoon?

24       THE DEFENDANT:  Yes, your Honor.

25       THE COURT:  Do you understand that the plea agreement

1     you have made with the government, which we call a C plea,

2     calls for a specific sentence as outlined by the Assistant

3     United States Attorney just now?

4          After consideration, the Court will either accept or

5     reject that agreement.  If I accept it, we will go forward with

6     the sentencing and I will impose the sentence you have agreed

7     upon.  If I reject the agreement, you will have the opportunity

8     to withdraw your plea of guilty and go to trial or not withdraw

9     your plea and become subject to a sentence which may be less

03:12 10    favorable than your agreement with the government.

11          Do you understand all of that?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you also understand that if you are

14    sentenced pursuant to your C plea agreement, you will have no

15    right to appeal that sentence to a higher court and no right to

16    be released on parole, which has been abolished?  Do you

17    understand that?

18          THE DEFENDANT:  Yes, your Honor.

19

03:13 20    MR. PIROZZOLO:  I'm sorry, your Honor.  This is Jack

21    Pirozzolo.  I apologize.  So we're clear, I want to make sure

22    it's clear that he has retained the right to appeal

23    conditionally under the agreement.

24          THE COURT:  I could have noted that.  There is a

25    conditional right to appeal that will be determined by an

1  appellate court, which will then determine your ultimate fate.

2  You understand that as well?

3        THE DEFENDANT:  Yes, your Honor.

4        MR. PIROZZOLO:  One very minor technical thing.  I

5  believe Mr. O'Connell may have misspoke very slightly with

6  regard to the last sentence of the conditional plea language,

7  which I believe provides defendant will have the right to

8  withdraw his guilty plea should defendant prevail on appeal.

9        MR. O'CONNELL:  That's right, your Honor.  He would

03:14 10  retain that right as well, pursuant to paragraph 1 of the plea

11  agreement.

12        THE COURT:  Mr. McGlashan, do you understand generally

13  that you have a right to plead not guilty to any offense

14  charged against you and to persist in that plea and that you

15  would then have the right to a trial by jury during which you'd

16  have the right to be represented by counsel, you'd have the

17  right to see and hear all of the witnesses and have them

18  cross-examined in your defense, you'd have the right on your

19  own part to decline to testify unless you voluntarily agree to

03:14 20  do so, and you have the right to the issuance of subpoenas or

21  compulsory process to compel the attendance of witnesses to

22  testify in your defense?  Do you understand all of that?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  And you further understand that, by

25  entering a plea of guilty, if that plea is accepted by this

1    Court, there will be no trial and you will have waived or given

2    up your right to a trial by jury as well as those other rights

3    associated with such a trial that I just described?

4         THE DEFENDANT:  Yes, your Honor.

5         THE COURT:  You understand that?

6         THE DEFENDANT:  Yes, your Honor.

7         THE COURT:  Then, Mr. O'Connell, will you please

8    inform the defendant of exactly what facts the government would

9    prove if this matter were to go to trial.

03:15 10    MR. O'CONNELL:  Yes, your Honor.  If this case were to

11   proceed to trial, the evidence would show through recorded

12   calls, e-mails, witness testimony, and other documents that

13   ACT, Inc. is a private for profit business headquartered in

14   Iowa that prepares, administers and scores the ACT exam, the

15   standardized test that's widely used as part of the college

16   admissions process.

17        The ACT exam and the ACT scores and score reports are

18   the intellectual and physical property of ACT, Inc.  ACT, Inc.

19   has the sole right to determine how to use the ACT exam and

03:16 20   endeavors to keep the exam and its operations exclusive, secure

21   and confidential.

22        According to ACT, Inc.'s rules, for example, no person

23   is permitted access to sit for the ACT exam unless she pays a

24   fee, promises to preserve the confidentiality of the exam, and

25   represents that she is the person whose name and address were

1    used in applying to sit for the exam.  ACT, Inc. also owns

2    copyrights to the ACT exam and its component questions that

3    prohibit anybody from copying, using or opening the ACT exam

4    other than the registered examinee on the prescribed test day.

5    In addition, ACT scores and score reports are the physical

6    embodiment of substantial and valuable services that ACT, Inc.

7    provides in its pursuit of making money.

8         ACT's business depends upon the integrity of the

9    testing process and the goodwill it has developed by ensuring

03:16 10   that its exams and the corresponding scores and score reports

11   are not the product of fraud or viewed as corruptible or

12   unreliable.  The value of ACT's products and the worth of ACT,

13   Inc. itself are negatively impacted when its testing process is

14   subverted or perceived to be subvertible.

15        ACT, Inc. typically uses paid test administrators to

16   administer its exams.  These test administrators owe fiduciary

17   duties, including the duty of honest services, to the ACT as

18   part of the test administration process.

19        Prior to administering the ACT exams, test

03:17 20   administrators certify that they will administer the test in

21   accordance with the policies and procedures of ACT, Inc., which

22   include keeping test materials secure and confidential, only

23   providing the test materials to named examinees and not

24   receiving any compensation from sources other than ACT, Inc.

25   related to the test administration.

1           After the ACT exam is complete, these policies and

2     procedures also require test administrators to certify that

3     they were actively involved in the test administration, to

4     immediately return the exam to ACT, Inc., and to submit a

5     report that accurately states the dates and times that each

6     section of the exam was completed.  In exchange for performing

7     these duties, test administrators are compensated by ACT, Inc.

8           The defendant, William McGlashan, Junior is a resident

9     of California.  McGlashan committed wire fraud and honest

03:18 10   services wire fraud in connection with the scheme to defraud

11    ACT, Inc. of its property and the honest services of its test

12    administrator, Igor Dvorskiy, by paying William Rick Singer

13    $50,000 to bribe Dvorskiy to allow Mark Riddell to purport to

14    proctor McGlashan's son's ACT exam and to secretly correct his

15    answers, thereby attaining a fraudulently inflated exam score.

16          McGlashan's participation in this scheme went as

17    follows: In April 2017, McGlashan engaged Singer to provide

18    college counseling services for his three children.  Prior to

19    engaging Singer, a psychologist had recommended that

03:19 20   McGlashan's son receive a testing accomodation of time and one

21    half.  However, at Singer's instruction, on September 7, 2017,

22    McGlashan's son e-mailed the psychologist asking for, quote,

23    double time for the ACT/SAT test, end quote, to allow him to

24    take the exam, quote, over the course -- sorry.  I apologize.

25    Quote, over the course of 2 days, end quote.  McGlashan's son

1  then forwarded his e-mail to McGlashan.  Thereafter, the

2  psychologist issued the requested double time accommodation and

3  the ACT granted McGlashan's son the double time over multiple

4  days accommodation for the exam.

5          On November 20, 2017, Singer forwarded an e-mail to

6  McGlashan from Igor Dvorskiy.  The e-mail attached a request

7  for a range testing form to schedule McGlashan's son's ACT exam

8  at the test center Singer controlled in West Hollywood,

9  California, where Dvorskiy served as the ACT test

03:20  10  administrator.  Singer instructed McGlashan to please send the

11  form to the ACT.

12          The form identified McGlashan's son as the examinee

13  and Dvorskiy as the test coordinator for this exam.  The form

14  also contained a certification signed by Dvorskiy that the exam

15  would be administered in accordance with the ACT administration

16  manual and that Dvorskiy would, quote, ensure that the test

17  materials are kept secure and confidential, used only for the

18  examinee identified on this form, not transferred to another

19  individual or location, and return to ACT immediately after

03:21  20  testing, end quote.

21          On November 23, 2017, McGlashan's wife advised her

22  son's high school that he would take the ACT exam at his

23  school, which was in the San Francisco Bay area, and that that

24  exam would take place on December 20th and 21st of 2017.

25          However, on November 28, 2017, McGlashan e-mailed the

1    learning specialist at her son's high school the following

2    explanation: Quote, I am in LA with my son on December 9th and

3    Rick, my son's college counselor, has arranged for him to take

4    the exam, the ACT test, at the school while we are there over

5    the weekend, end quote.

6         Two days later, on November 30, 2017, Singer forwarded

7    his bookkeeper the following message from McGlashan:  Quote,

8    can you send me the details where I send the 50 payment and who

9    I make it out to, et cetera, end quote.  Later that day,

03:22 10   Singer's bookkeeper e-mailed McGlashan a $50,000 invoice from

11   Singer's nonprofit entity, the Key Worldwide Foundation, or

12   KWF, for payment regarding West Hollywood Prep.

13        On December 1, 2017, the ACT e-mailed Dvorskiy a

14   confirmation that McGlashan's son's exam would take place at

15   the West Hollywood test center starting on December 9, 2017.

16   Dvorskiy, in responding to that e-mail, again certified he

17   would abide by ACT's test coordinator policy and the ACT

18   administrator manual when administering his son's --

19   McGlashan's son's exam.  Dvorskiy further certified that he

03:22 20   would, quote, ensure that the test materials are kept secure

21   and confidential, used for this examinee only, and return the

22   ACT immediately after testing, end quote.

23        On December 4, 2017, McGlashan directed his assistant

24   to book a hotel room for the night of Friday, December 8, 2017,

25   in Beverly Hills and to, quote, make sure they FedEx the check

1   to the Key Foundation, end quote.  McGlashan further directed

2   his assistant to book a flight from San Francisco to

3   Los Angeles, leaving on Friday at 6:30 p.m. and returning the

4   next day in the early afternoon.

5          On December 6, 2017, McGlashan made a purported

6   donation of $50,000 to KWF from his personal charitable

7   donation fund.  Two days later, on the evening of December 8th,

8   McGlashan and his son flew to Los Angeles.  The following day

9   McGlashan brought his son to the West Hollywood test center

03:23 10  where Dvorskiy was present to administer the exam for

11  McGlashan's son and two other students working with Singer.

12         McGlashan's son completed the exam in a few hours and

13  did not use the 2 days allotted to him by the ACT.  Dvorskiy,

14  in violation of the ACT, Inc.'s policies and procedures and his

15  duty of honest services to the ACT, Inc. allowed Riddell to

16  purport to proctor the ACT exam for McGlashan's son and

17  thereafter correct his answers, thereby fraudulently earning

18  McGlashan's son a near perfect score of 34.  McGlashan and his

19  son then flew back to San Francisco on a prearranged flight.

03:24 20         On December 13, 2017, Dvorskiy sent McGlashan's son's

21  completed ACT exam by FederalExpress to ACT, Inc. in Iowa City.

22  Accompanying the exam was a form called the ACT Administration

23  Exams and Payment Report.  That form falsely stated that the

24  exam had been administered over 2 days, December 9th and 10th,

25  2017.  This report also falsely stated that another employee at

1   the West Hollywood test center, rather than Dvorskiy, had

2   administered McGlashan's son's exam.

3          On December 15, 2017, Singer caused KWF to pay

4   Dvorskiy $40,000 for facilitating Riddell's cheating on behalf

5   of McGlashan's son and other students.

6          On December 16, 2017, Singer caused KWF to pay Riddell

7   $35,000 for correcting the answers for McGlashan's son and for

8   other students.

9          On January 10, 2018, which was the day that

03:25 10   McGlashan's son's ACT score became available online, McGlashan

11   sent a text message to Singer stating, quote, you have a very

12   relieved and motivated young man, exclamation point.  Very

13   grateful, end quote.  Singer replied, "Thank you.  It takes a

14   lot of pressure off."  McGlashan responded, "Yes."

15          On October 24, 2018, the ACT score Riddell secretly

16   obtained on behalf of McGlashan's son was submitted to various

17   colleges and universities in connection with his applications,

18   including Northeastern University in Boston.  These scores were

19   submitted via an interstate wire communication.  McGlashan also

03:26 20   discussed with Singer the accommodations that would be required

21   for his two younger children to engage in the exam cheating

22   scheme.

23          THE COURT:  All right.  Mr. McGlashan, do you have

24   anything to add to what Mr. O'Connell says the government would

25   be able to prove if this matter were to go to trial?

1        THE DEFENDANT:  No, I do not, your Honor.

2        THE COURT:  Do you disagree with anything he says the

3   government would be able to prove?

4        THE DEFENDANT:  No, I do not, your Honor.

5        THE COURT:  I would ask my deputy clerk to inquire of

6   the defendant how he now wishes to plead.

7        THE CLERK:  Mr. McGlashan, as to Count 7 of the Fourth

8   Superseding Indictment charging you with wire fraud and honest

9   services wire fraud, aiding and abetting, in violation of

03:27 10  Title 18 of the United States Code Section 1341 and 1346 and 2,

11  you have previously pled not guilty.  Do you now wish to change

12  your plea?

13       THE DEFENDANT:  I do.

14       THE CLERK:  What say you now as to Count 7 of the

15  Fourth Superseding Indictment; guilty or not guilty?

16       THE DEFENDANT:  Guilty.

17       THE CLERK:  Thank you.

18       MR. O'CONNELL:  Your Honor, if I may.  We asked if he

19  was pleading guilty to mail fraud and I think he's actually

03:27 20  pleading guilty to wire fraud.  So it's 1343, I believe.

21       THE COURT:  With that correction to the cite that the

22  deputy clerk made, the cite should be to Section 1343, is that

23  correct?

24       MR. O'CONNELL:  That is correct, your Honor.

25       THE COURT:  Understanding that, do you plead guilty,

```
 1    Mr. McGlashan?

 2              THE DEFENDANT:  Yes, your Honor.

 3              THE COURT:  That being so, it is the finding of the

 4    Court in the case of the United States versus William

 5    McGlashan, Junior that the defendant is fully competent and

 6    capable of entering an informed plea and that his plea of

 7    guilty is a knowing and voluntary plea, supported by an

 8    independent basis in fact, containing each of the essential

 9    elements of the offense charged.  His plea is therefore

10    conditionally accepted pending my receipt of the Presentence

11    Report.

12              As I said before, the Court will accept or reject the

13    defendant's guilty plea after consideration of that Presentence

14    Report and inform the defendant accordingly.  A written

15    Presentence Report will be prepared for me, Mr. McGlashan, by

16    the Probation department.  You will be asked to give

17    information for that report, and your attorney may be present

18    if you wish.  Both you and your attorney will be given the

19    opportunity to read that Presentence Report before the

20    sentencing hearing.  At the sentencing hearing itself, not only

21    your attorney but you will be afforded the opportunity to

22    speak.  Do you understand all of that?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  I'll ask my deputy to give us a proposed

25    date for sentencing.
```

1           THE CLERK:  Yes, your Honor.  Wednesday, May 12, 2021,

2    at 3:00 p.m.

3           THE COURT:  Wednesday, May 12, 2021, at 3:00 p.m.  Any

4    known conflicts, either Mr. Pirozzolo or Mr. Hueston?

5           MR. PIROZZOLO:  None here, your Honor.

6           MR. HUESTON:  It's Mr. Hueston speaking.  No, your

7    Honor.

8           THE COURT:  Mr. O'Connell?

9           MR. O'CONNELL:  No.  No conflicts, your Honor.

03:30 10          THE COURT:  Then that will be the date for sentencing,

11   Wednesday, May 12, 2021, at 3:00 p.m.  I have received a letter

12   from Probation with respect to the defendant's compliance with

13   his conditions of release.  I understand those same conditions

14   apply.  Is that correct, Mr. O'Connell?

15          MR. O'CONNELL:  That is correct, your Honor.

16          THE COURT:  And do you understand those conditions to

17   still apply, Mr. McGlashan?

18          THE DEFENDANT:  Yes.

19          THE COURT:  If you violate any of those conditions,

03:31 20   you can be punished.  And if you fail to appear for your

21   sentencing on Wednesday, May 12th at 3:00 p.m., you will be

22   subject to imprisonment.  Do you understand that?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Is there any further business then to come

25   before the Court in these proceedings?  Mr. O'Connell?

1          MR. O'CONNELL:  No, your Honor.

2          THE COURT:  Mr. Pirozzolo?

3          MR. PIROZZOLO:  No, your Honor.

4          THE COURT:  Mr. Hueston.

5          MR. HUESTON:  No, your Honor.  Thank you.

6          THE COURT:  Then we're adjourned.  Thank you.

7          (Whereupon, the proceedings adjourned at 3:31 P.M.)

1                    C E R T I F I C A T E

2

3

4   UNITED STATES DISTRICT COURT )

5   DISTRICT OF MASSACHUSETTS    )

6

7

8          I, Kristin M. Kelley, certify that the foregoing is a

9   correct transcript from the record of proceedings taken

10  February 10, 2021 in the above-entitled matter to the best of

11  my skill and ability.

12

13

14      /s/ Kristin M. Kelley              February 17, 2021

15      Kristin M. Kelley, RPR, CRR                  Date
        Official Court Reporter
16

17

18

19

20

21

22

23

24

25