UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No.: 19-10080-NMG-15 |
| | ) |
| (15)   WILLIAM MCGLASHAN, JR., | ) |
| | ) |
| Defendant | ) |
| | ) |

## GOVERNMENT'S SENTENCING MEMORANDUM

The government submits this memorandum in connection with the sentencing of defendant William McGlashan, Jr. The parties have entered into a plea agreement pursuant to FED. R. CRIM. P. 11(c)(1)(C), and, for the reasons set forth below, the government respectfully requests that the Court impose the agreed-upon disposition of a term of imprisonment of 90 days, a $250,000 fine, and two years of supervised release with 250 hours of community service.

### I.     THE OFFENSE CONDUCT

The Court is by now familiar with the facts of this case, and so the government restates them here only briefly. McGlashan, a resident of California, conspired with William "Rick" Singer and others to commit wire fraud and honest services wire fraud by agreeing to pay $50,000—styled as a donation to Singer's non-profit, the Key Worldwide Foundation ("KWF")—to bribe Igor Dvorskiy, a standardized test administrator, to allow Mark Riddell to purport to proctor McGlashan's older son's ACT exam and then to secretly correct his answers in order to obtain a fraudulently inflated exam score.[1] Pre-Sentence Report ("PSR") ¶¶ 41-61.

---

[1] Dvorskiy pled guilty to racketeering conspiracy on November 13, 2019, *see* 18-CR-10081-IT, and Riddell pled guilty to mail fraud and honest services mail fraud conspiracy, and money laundering conspiracy on April 12, 2019, *see* 19-CR-10074-NMG.

In or about 2017, after he agreed to engage in the scheme, McGlashan used his son's testing accommodation as a pretext to switch his son's exam to a test center Singer controlled. PSR ¶¶ 43-45. In November 2017, after McGlashan's son received the "double time" accommodation, Singer instructed McGlashan to submit a form to ACT, Inc. to switch his son's exam from his high school, in the San Francisco area, to the school where Dvorskiy worked in West Hollywood (the "West Hollywood Test Center").[2] PSR ¶ 45. On November 28, 2017, even though his spouse had already told her son's high school that he would take the ACT exam at his high school on December 20 and 21, 2017, McGlashan moved the exam to the West Hollywood Test Center by falsely explaining to his son's high school: "I am in LA with [my son] on Dec 9, and Rick ([my son]'s college councilor [sic]) has arranged for [him] to take the ACT test at a school while we are there over the weekend." PSR ¶¶ 46-47. In fact, McGlashan did not have preexisting plans to be in the Los Angeles area with his son.

On November 30, 2017, Singer forwarded his bookkeeper a message from McGlashan: "Can you send me details where I sent the 50 payment and who I make it out to etc?" PSR ¶ 48. That day, Singer's bookkeeper e-mailed McGlashan a $50,000 invoice from KWF for "payment regarding West Hollywood Prep." Four days later, McGlashan directed his assistant to reserve a hotel room for one night—December 8, 2017—in Beverly Hills, to book a flight from San Francisco to Los Angeles for December 8, 2017 and a return flight for the next afternoon, and "make sure they fedexed the check to Key Foundation." PSR ¶ 50. On December 6, 2017, McGlashan made a purported $50,000 donation to KWF from his personal charitable donation

---

[2] This form identified Dvorskiy as the test coordinator for McGlashan's son's exam, and contained a certification signed by Dvorskiy pursuant to which he agreed to administer McGlashan's son's exam in accordance with the ACT's policies and "ensure that the test materials are kept secure and confidential, used only for the examinee identified on this form, not transferred to another individual or location, and returned to ACT immediately after testing." PSR ¶ 45.

fund. PSR ¶ 51.

On December 8, 2017, McGlashan and his son flew to Los Angeles. PSR ¶ 52. The following day, McGlashan brought his son to the West Hollywood Test Center, where Dvorskiy was present to administer the exam for McGlashan's son and two other students working with Singer. PSR ¶ 53. McGlashan's son completed the exam in a few hours and did not use the two-day accommodation. Dvorskiy, in violation of ACT, Inc.'s policies and procedures and his duty of honest services to ACT, Inc., allowed Riddell to purport to proctor McGlashan's son's ACT exam, and, thereafter, correct his answers. In so doing, Riddell fraudulently ensured that McGlashan's son earned a near-perfect score of 34. After the exam, on December 9, 2017, McGlashan and his son flew back to San Francisco.

On December 13, 2017, Dvorskiy mailed McGlashan's son's completed exam, with the exam answers corrected by Riddell, to ACT, Inc. PSR ¶ 54. Dvorskiy also sent ACT, Inc. a report that falsely stated that the exam had been administered over two days. Two days later, Singer caused KWF to pay Dvorskiy $40,000 for facilitating Riddell's cheating on behalf of McGlashan's son and the children of other Singer clients. PSR ¶ 55. The next day, Singer caused KWF to pay Riddell $35,000 for correcting the exam answers for McGlashan's son and the children of other Singer clients. PSR ¶ 56. In October 2018, the ACT score that Riddell secretly obtained on behalf of McGlashan's son was submitted to various colleges and universities, including Northeastern University, in Boston, via interstate wire communication. PSR ¶ 60.

In addition to the foregoing, McGlashan participated in the college recruitment aspect of Singer's scheme by agreeing with Singer to make payments styled as "donations" to a University of Southern California ("USC") athletic fund and to KWF to facilitate his older son's admission to USC as a purported football recruit, even though he did not play football. PSR ¶¶ 62-75.

Ultimately, despite facilitating the creation of a fake athletic profile by having his son pose for pictures and agreeing to pay $250,000 in bribes, McGlashan did not complete the college recruitment scheme after Singer told him about the government's investigation.[3]

McGlashan also explored engaging in additional exam cheating for his other children. For example, in 2018, McGlashan discussed with Singer the accommodations that would be required for his two younger children to engage in exam cheating. PSR ¶ 61. That same year, McGlashan also discussed with Singer the accommodations that would be needed for his older son to take the SAT II subject exams at one of Singer's test centers. PSR ¶ 59.

## II.     SENTENCING RECOMMENDATION

McGlashan engaged in serious criminal conduct involving fraud and deception by using his enormous wealth and privilege to buy his son an illicit advantage over more deserving applicants in the college admissions process. He took an active role in facilitating the fraud, including by directing his son to obtain the "double time" accommodation necessary to engage in the scheme; by submitting fraudulent paperwork to ACT, Inc. that used that accommodation as a pretext to transfer his son's exam to the test center Singer controlled; by lying to his son's high school about the reason why he would not take the exam there; and by using his personal charitable donation fund—a fund that was supposed to secure tax deductions for McGlashan by providing donations to legitimate charities—to funnel the bribe and related payments through Singer's fake non-profit. In so doing, McGlashan corrupted the administration of the ACT exam and effectively stole an exam score that his son did not earn.

---

[3] McGlashan contends that he abandoned this aspect of the scheme before Singer's obstruction. This is not true. As detailed in the PSR, McGlashan remained actively engaged in this scheme, and did not pursue his own connections to secure his son's admission to USC until Singer called him on an unmonitored line and told him, in substance, that they should meet face-to-face because Singer believed his phone was "wired." *See* PSR ¶¶ 62-75 and Gov't Objections 6 & 7.

When he thought no one else was looking, McGlashan was undeterred by the criminal nature of his conduct. He celebrated the success of the exam cheating—remarking to Singer after receiving the fraudulent score that "You have a very relieved and motivated young man! Very grateful!"—and later made plans to cheat again for his other children. He joked about the fraud required for the college recruitment aspect of the scheme—quipping to Singer that its "just totally hilarious" that his son would be admitted to USC as a football recruit—and, even after Singer's obstruction, told Singer he was open to continuing with the scheme once everything "cleared up." In short, McGlashan fully embraced the fraud.

A sentence of 90 days' imprisonment for McGlashan is comparable to the sentences that have been imposed on similarly situated defendants in this and related cases. As examples:

- Defendant David Sidoo was sentenced to 90 days in prison after agreeing to pay $200,000 to facilitate exam cheating multiple times on behalf of his two sons. Like McGlashan, Sidoo engaged in fraud beyond exam cheating—including by providing edits to fraudulent essays for his son's college application and arranging for cheating on a high school exam. And Sidoo and McGlashan were both active participants in the scheme. Unlike McGlashan, however, Sidoo completed the exam cheating twice, did not pursue the college recruitment aspect of the scheme, and served his sentence at a minimum-security prison because he was not a United States citizen.[4]

- Defendant Devin Sloane was sentenced to four months in prison after agreeing to pay $250,000 to facilitate his son's admission to USC as a fake water polo player. Like McGlashan, Sloane caused his son to pose for photographs to be included in a falsified athletic profile for the college recruitment aspect of the scheme. In contrast to McGlashan, however, Sloane completed that scheme, and, when doing so, engaged in further deception to conceal the fraud by brazenly challenging the "business or legal right" of a high school counselor who expressed skepticism over Sloane's son's admission to USC as an athletic recruit.

- Defendants Gregg and Marcia Abbott were each sentenced to one month in prison after agreeing to pay $125,000 to facilitate cheating on their daughter's college entrance exams. Like McGlashan, the Abbotts engaged in Singer's scheme on two occasions. Unlike McGlashan, however, the

---

[4] In contrast, McGlashan will most likely serve his sentence at a federal prison camp.

Abbotts promptly accepted responsibility for their crimes, agreeing to plead guilty before being indicted or having the opportunity to review discovery. In addition, unlike McGlashan, the Abbotts did not participate in the college recruitment aspect of the scheme or explore engaging in test cheating on behalf of another child.

- Defendant Agustin Huneeus was sentenced to five months in prison after agreeing to pay $300,000 to facilitate his daughter's admission to USC as a fake water polo recruit and using Singer to cheat on her college entrance exam.[5] Like McGlashan, Huneeus participated in both the college recruit and exam cheating aspects of Singer's scheme. Huneeus, like McGlashan, lied to his daughter's high school counselors to move her exam to a testing site Singer controlled. Unlike McGlashan, however, Huneeus completed the college recruiting aspect of the scheme, made his daughter complicit in the scheme by directing her to write a false e-mail to USC about being a college-level athlete, and proposed using a second child to facilitate the exam cheating.

In addition to avoiding unwarranted sentencing disparities, the agreed-upon sentence reflects the history and characteristics of the defendant—including his lack of prior criminal conduct, his successful career and standing in the community, and his legitimate charitable work—and the need for the sentence imposed to constitute just punishment and provide for adequate deterrence. *See* 18 U.S.C. §3553(a). It likewise accounts for the seriousness of the offense, and in particular McGlashan's deliberate and shameless conduct to ensure the success of the exam cheating for his older son, his eagerness to pursue the college recruitment aspect of the scheme to secure that son's admission to USC, and his willingness to engage in exam cheating yet again on behalf of his other children—all factors that warrant a meaningful term of incarceration. The purposed sentence is, accordingly, sufficient, but not greater than necessary to achieve the ends of Section 3553(a).

---

[5] Huneeus's sentence was subsequently reduced to time served (approximately 4.5 months) pursuant to 18 U.S.C. § 3582(a)(1)(A).

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court accept the agreed-upon sentence of 90 days' imprisonment, a $250,000 fine, and two years of supervised release with 250 hours of community service.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   */s/ Justin D. O'Connell*
JUSTIN D. O'CONNELL
LESLIE A. WRIGHT
KRISTEN A. KEARNEY
KARIN M. BELL
STEPHEN E. FRANK
Date: May 7, 2021                Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by CM/ECF on May 7, 2021.

*/s/ Justin D. O'Connell*
JUSTIN D. O'CONNELL