UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 19-CR-10080-NMG |
| GAMAL ABDELAZIZ, et al, | ) | REQUEST FOR ORAL ARGUMENT |
| Defendants. | ) | |

**REPLY TO DEFENDANT'S OPPOSITION TO
MOTION TO INTERVENE AND QUASH TRIAL SUBPOENAS**

The defendants' Opposition reveals that they are attempting to do what the court has forbidden: introduce evidence of events of which the defendants were not aware before they entered into the conspiracy with Rick Singer and of the University of Southern California's general admissions policies. "Evidence of what other unrelated students and parents did has no bearing on the defendants' state of mind and, thus, is irrelevant to the requisite scienter that the government must prove in this case." Transcript, DE #2108 at 6:11-22. "This trial is not going to be about the general admissions policy of the University of [Southern] California or the method it uses to admit students. USC is not on trial here, and I will not have this case devolve into multiple side trials." *Id.*  As the Court recently stated, "This Court reminds counsel that testimony concerning the admissions policy of the University of Southern California ("USC") is subject to the Court's previously stated guidelines that such evidence will be admissible at trial *only if* defendants show that they were aware of any alleged USC policy *before* the events that are the subject matter of the indictment in this case." DE #2211 (emphasis added).

ME1 37530680v.2

Nowhere in their filing did the defendants explain just how the expected testimony of two of the proposed witnesses (Alexandra Reisman and Scott Wandzilak) -- who had nothing to do with their children's admissions process – and the third proposed witness (Alex Garfio) -- who had only an administrative role with one child's presentation to an Admission's committee, -- and where all three of the proposed witnesses had no contact with the defendants whatsoever, -- comports with the ruling. None of their exhibits concern either defendants' children. Instead, they are all about other applicants and there is no evidence that either defendant knew of them before they entered the conspiracy with Singer. Their vague references to testimony about the duty of honest services USC employees owe the institution, without articulating what that testimony would be or its foundation should be seen for what they are: an effort to skirt the court's prohibition against evidence of USC's general policies and the methods it uses to admit students. Their perfunctory claim that these three can testify about the tax count is nothing short of baseless. Finally, the totality of the proposed testimony shows that it would confuse the jury by improperly equating the allegation that the defendants were admitted due to false athletic resumes with the defendants' argument that "money mattered" in the admission process, and by mischaracterizing the facts. The Court should quash the trial subpoenas issued for their testimony.[1]

## ARGUMENT

**1.    Reisman and Wandzilak**

Reisman and Wandzilak had nothing to do with either defendants' children's applications

---

[1] No one is seeking to trample the defendants right to present a defense at trial. But there are limitations. While the defendants claim that Alexandra Reisman, Scott Wandzilak, and Alex Garfio are critical to their defense, there was no mention of them, their proposed testimony nor any exhibits relating to them during any of the opening statements in this matter.

to USC and had no contact with defendants or their children. The defendants' filing does not contest this point. Indeed, Reisman's and Wandzilak's roles were limited to being fundraisers in the USC Athletics department and they neither solicited nor were involved with any donations that the defendants may have made to USC.

The defendants make assertions about Reisman and Wandzilak's testimony which are simply not accurate. Neither Reisman nor Wandzilak would testify that "USC actually did have a practice of using Subco as a means of fundraising." Defendant's Opposition to Intervenors' Motion to Quash Trial Subpoenas, p. 4. Nor is it true that "they can provide testimony as to USC's practices for documenting and acknowledging donations, USC's practices for valuing and offsetting any in kind goods or services, and whether USC ever offset a family's donation to USC based on the admission of a relative to USC." *Id.* at 10. Not surprisingly, defendants offer nothing to prove the witnesses knew about these matters, which they do not.

The defendants mischaracterize their exhibits. For example, Exhibit C actually concerns a student whose family was *not* solicited for a donation and did *not* make a donation. And Exhibit D in reality is about a real track and field student-athlete who was admitted before Reisman began working at USC and wanted the new coach to allow him to work out with the team as the previous coach had promised him, and he competed for USC, including winning a varsity letter. This is the opposite of the applicants such as Abdelaziz's child who failed to make her high school's varsity team and never tried to play for USC, and Wilson's son who never competed in a single match for USC. Lastly, Exhibits E and F are about the same applicant, not two different ones. And all they show is that Wandzilak referred a real high school water polo player to USC's water polo coach. The fact that Wandzilak introduced a prospective student athlete to a coach has no bearing on the coach's decision whether or not to recruit that

3

ME1 37530680v.2

prospective student-athlete, nor does Wandzilak have anything to do with whether the Office of Admission decides to admit the prospective student-athlete.

A theme of the defendants' proposed testimony confuses the distinction between the Subco Admissions process and the VIP Admissions process. Contrary to what their filing could lead the Court to believe, Reisman and Wandzilak would *not* testify that Subco was used for fundraising. Instead, Subco was to be reserved for real athletes that USC coaches thought had sufficient talent or ability in their sports. The defendants do not contend that Reisman or Wandzilak knew how the Subco Admissions Committee operated or who its members were. Subco was *not* part of Athletics, Subco was part of Admissions. By comparison, just like other departments, Athletics could issue a "flag" for students who were of special interest to the Athletics Department, whether it be for development purposes or any other reason. This "special interest" or "VIP" tag had nothing to do with the applicant's athletic ability, and nothing to do with the allegations against the defendants. Moreover, the defendants have offered no evidence that Reisman or Wandzilak knew how or whether Admissions evaluated the significance of a special interest tag, other than knowing that many, many VIP applicants were *denied* admission.

The defendants attempt to circumvent the Court's ruling by making a general assertion that Reisman and Wandizlak would testify to the duty of honest services USC is owed by its employees. The defendants fail to articulate specific testimony or the foundation for such testimony. There is no evidence that either of them is knowledgeable on this subject. Their claim runs headlong into the Court's order and does support requiring them to testify, let alone traveling across America during a pandemic to do so.

In a last-ditch effort to compel their appearances, Wilson briefly offers that these witnesses would provide exculpatory testimony regarding the tax charge. The reality is that

4

contrary to his assertion, they *cannot* "provide testimony as to USC's practices for documenting and acknowledging donations, USC's practices for valuing and offsetting any in kind goods or services, and whether USC ever offset a family's donation to USC based on the admission of a relative to USC" (Opposition at 10).  The defendants utterly fail to establish that Reisman or Wandzilak know anything about these tax matters.

Reisman and Wandzilak should not be compelled to appear and testify.

**2.      Garfio**

The defendants have not identified any testimony that Garfio can provide regarding Abdelaziz's child because Garfio left his position with Donna Heinel before Abdelaziz's child even applied to USC.  Moreover, like Reisman and Wandzilak, Garfio also had no contact with either of the defendants or their children.  Like them, he would *not* testify that "USC actually did have a practice of using Subco as a means of fundraising." Opposition, p. 4.  As with them, the defendants have not specified what Garfio's testimony would be about the duty of honest services USC's employees owed to it, the foundation for such testimony, and why his testimony on it would not be cumulative of other evidence.  Like Reisman and Wandzilak, Garfio *cannot* "provide testimony as to USC's practices for documenting and acknowledging donations, USC's practices for valuing and offsetting any in kind goods or services, and whether USC ever offset a family's donation to USC based on the admission of a relative to USC." *Id.* at 10.

In light of those realities, the defendants pivot to argue that Garfio is a necessary witness for Wilson and rely upon unsupported assertions and an inaccurate recitation of expected testimony to do so.  The defendants make one unsupported allegation after another about Garfio but fail to provide a single document or citation to the record to support their claims other than a footnote that, "Documentary evidence indicates that Garfio was provided with a copy of

5

Wilson's son's athletics profile." Opposition, p. 5, fn. 5.  Moreover, the defendants admit that they are seeking "general testimony" from him on the Athletics department and Subco's operations, in part. *Id.* at 5.  They offer only two exhibits in support of their demand for Garfio's testimony, *neither of which involves the children of either defendant*.  Exhibit A concerns a Subco applicant who was actually *denied* admission, even though the email the defendants provided to the Court mistakenly states that she was accepted.  Exhibit B merely shows that Garfio forwarded an email to Heinel from an applicant's parent who noted at the end of their email about their child, who had already been offered transfer admission, that they are Cardinal & Gold members (which is one of the lowest giving levels at USC ($3,000)), and, according to the defendants' citation to a document that they have not provided to Intervenors, the applicant was never presented to Subco as a recruited athlete.  This student's admission bears no similarity to the admission of the defendants' children.

In short, if there were evidence that Garfio would testify to all of these things that the defendants claim, they would cite to it.  But of course, they have not.  Moreover, the two exhibits they provide do not concern their children.  Importantly, there is no evidence that either defendant knew any of this before they entered the conspiracy with Singer, and the methods USC uses to admit students are not on trial. Transcript, DE #2108 at 6:11-22; DE #2211.  As such, the testimony defendants are seeking from Garfio is irrelevant and the subpoena for his testimony should be quashed.

## CONCLUSION

For all the foregoing reasons, Reisman, Wandzilak and Garfio respectfully request that

this Court quash defendants' subpoenas commanding each of the witnesses' appearances to testify at trial.

Respectfully submitted,

s/ Glenn A. MacKinlay
Glenn A. MacKinlay
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110

Dated: September 20, 2021

## CERTIFICATE OF SERVICE

   I hereby certify that on this date this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to those indicated as non-registered participants.

                  s/ Glenn A. MacKinlay
                  Glenn A. MacKinlay